SHELBY C. JONES, Respondent, v. JOHN A. SHEPPARD, Appellant.

St. Louis Court of Appeals, November 16, 1909.

1. **DEEDS OF TRUST: Suit for Surplus of Foreclosure Sale: Pleading: Inconsistent Positions.** In an action by the grantor in a deed of trust against the trustee to recover the surplus funds arising from a foreclosure sale, where the defendant in his answer alleged plaintiff had assumed and agreed to pay a prior deed of trust on the property foreclosed; that the debt secured thereby was due and payable at the time of said foreclosure; and that he had given plaintiff credit on said debt for the amount of said surplus, a defense could not be made, under said answer, that there had been a valid foreclosure of said prior deed of trust, which deprived plaintiff, as grantor in said second incumbrance, of the right to the surplus proceeds arising from the foreclosure of said second incumbrance.

2. ——: ——: ——: **Inconsistent Allegations.** Allegations setting up such a defense could not be coupled in the answer with the other defense; for proof of one would disprove the other.

3. ——: ——: **Junior and Senior Incumbrances: Sale Under Senior Incumbrance.** In an action by the grantor in a deed of trust against the trustee to recover the surplus funds arising from a foreclosure sale, which he had applied as a payment on a note secured by a prior deed of trust, a defense that there had been a valid foreclosure of said prior deed of trust, if pleaded and proved, would not be a good one, for if the first foreclosure sale was valid, then, according to the evidence relied on to prove its validity, the debt had been satisfied and its owner was entitled to no payment on it.

4. ——: ——: **Power of Trustee to Dispose of Surplus.** The disposition by the trustee of the proceeds of a sale under a deed of trust must ordinarily be ascertained from the directions of the instrument; provided they are not in conflict with the law.

5. ——: ——: **Provisions for Payment of Surplus to Mortgagor in Accord with the Law.** A provision in a deed of trust requiring the surplus remaining of sale money, after discharging the secured debt, expenses of sale, etc., to be paid to the mortgagor is in accord with the law.

6. ———: ———: **Junior Mortgagor Entitled to Surplus as Against Senior Lienor, When.** As between senior lienors and a junior mortgagor, the latter is entitled to the surplus arising from a foreclosure sale under the junior mortgage, as against the former, unless he has relinquished it in the instrument or *aliunde*.

7. ———: ———: ———: **Purchaser at Foreclosure Sale Buys Subject to Prior Incumbrances.** The purchaser at a foreclosure sale buys subject to prior incumbrances, at least unless, under some arrangement, the whole fee is sold.

8. ———: ———: **Junior Mortgagee Entitled to Surplus as Against Mortgagor.** ·The execution of a junior mortgage amounts to an assignment of the mortgagor's equity of redemption to the junior mortgagee and of the assignor's right in equity to the surplus, in case of a sale under a prior incumbrance; hence, a junior incumbrancer will take precedence over the mortgagor, as regards the right to have his demand paid out of the surplus proceeds of such a sale.

9. ———: ———: **Transferee of Mortgagor's Equity of Redemption Entitled to Surplus as Against Mortgagor.** A person to whom a mortgagor conveys or assigns his equity of redemption, by way of sale, as well as one who purchases it under execution, or to whom it is otherwise transferred *in invitum*, will step into the shoes of the mortgagor in respect of his right to the surplus proceeds of a foreclosure sale.

10. ———: ———: **Second ˙Mortgagor Entitled to Surplus Proceeds Under Junior Foreclosure, Even Though Prior Incumbrance Foreclosed.** The foreclosure of a prior mortgage, especially one not given by the mortgagor in a second incumbrance, but by his grantor, will not cut off the right of the second mortgagor to the surplus proceeds arising from a sale under the second instrument.

11. ———: ———: **Trustee Must Sell for Cash, When.** Where a trust deed required the trustee to sell for cash upon foreclosure, he could not give credit on a note secured by a senior trust deed, alleged to have been assumed by the mortgagor in his trust deed.

12. ———: ———: **Purchaser at Foreclosure Under Prior Incumbrance not Entitled to Proceeds of Sale Under Junior Incumbrance.** The foreclosure of a prior mortgage cuts off a junior incumbrance and any equity to redeem therein, but does not transfer that equity to the purchaser at a sale under the first incumbrance, and, therefore, does not carry any right to surplus proceeds arising from a sale under the junior incumbrance.

13. ———: ———: **Evidence: Assumption of Incumbrance May be Established by Parol.** The assumption by a purchaser of land of an incumbrance thereon may be shown by parol.

14. ——: ——: **Assumption of Incumbrance: Duty of Trustee.**
The assumption of payment of a senior deed of trust by one
who subsequently executed a second deed of trust, in which it
was provided the surplus arising from a foreclosure should
be paid to him, would not justify the trustee in said junior
deed of trust in paying such surplus to the holder of the
senior deed of trust.

15. ——: ——: ——: **Remedies Against Person Assuming
Payment.** No doubt such an assumption would have given
the owner of the senior incumbrance a right of action against
the person so assuming, personally, or to attach the surplus, or
reach it by suit in equity, as the circumstances might warrant.

Appeal from St. Louis City Circuit Court.—*Hon.
Virgil Rule*, Judge.

AFFIRMED.

*H. G. Offenbacher* and *Thos. B. Harvey* for appellant.

(1) The court erred in rejecting the first deed of
trust and note offered in evidence by the defendant.
McNutt v. Life Ins. Co., 181 Mo. 102; McKnight v.
Wimer, 38 Mo. 134. (2) The court erred in not permitting an explanation of the cause of the second sale
of the property. (3) It was competent to show that
the plaintiff had assumed the payment of the first note
also, and had agreed that the fund resulting from a sale
of the property should be applied to the payment of
both of them. Stark v. Love, 128 Mo. App. 35.

*George V. Reynolds* for respondent.

(1) In the distribution of the proceeds of the
sale, the trustee must conform with the directions of
the deed. Minor on Real Property, vol. 1, sec. 668. (2)
A trustee holding the naked legal title cannot, on a
sale of the property, use part of the purchase money
to satisfy prior encumbrances, unless he is empowered
thereto in the instrument creating the trust. Helweg
v. Heitcamp, 20 Mo. 569; Scott v. Shy, 53 Mo. 478;
Schmidt v. Smith, 57 Mo. 135; Hargadine v. Henderson,

97 Mo. 375; Tanner v. Taussig, 11 Mo. App. 534; Price v. Blankenship, 144 Mo. 203.

Plaintiff executed to defendant as trustee a deed of trust conveying certain property in the city of St. Louis, to secure the payment of a promissory note of five hundred dollars, dated October 11, 1905, and payable to the order of Pingree McFerren, on or before April 15, 1906, with interest at six per cent. The conveyance provided for the sale of the property by the trustee if default occurred in the payment of the note, and the trustee covenanted "faithfully to perform the trust" created by the deed. Default having been made in payment, Jacob S. McFerren, the holder of the note when the default happened, called on defendant as trustee to foreclose the deed of trust by selling the property according to the terms of the instrument. This was done and on July 5, 1907, defendant sold the property to the highest bidder, who was Jacob S. McFerren, for $3500, and executed a trustee's deed to him on said day. The amount of the note secured by the deed of trust at the date of the sale was $552, the trustee's fees and other expenses of the sale amounted to $108.86, and these two items added made $660.86, leaving a surplus over the price bid of $2839.14. The foreclosed deed of trust provided as follows, regarding the disposition of the proceeds of a foreclosure sale by the trustee: that "he should pay first the cost and expense of executing the trust, including lawful compensation of said trustee, and also an auctioneer's fee of five dollars for each parcel of land sold hereunder, and next he shall repay to any person or persons who may or shall under the covenants hereinbefore set forth have advanced or paid any money for taxes, mechanic's liens or insurance, as above provided, all sums so by him or them advanced

and not already repaid, together with interest thereon at the rate of eight per cent per annum from date of such advance till day of payment, and next the amount unpaid on said notes, together with the interest accrued thereon, and the remainder, if any, shall be paid to the party of the first part or his legal representatives." On the day of the sale, plaintiff gave defendant written notice plaintiff claimed any surplus arising from the sale of the property above the amount secured by the deed of trust, and demanded defendant pay the same to plaintiff and to no one else. On the next day, July 6, 1907, plaintiff again notified defendant in writing plaintiff claimed any surplus arising from the sale and asked defendant to furnish plaintiff the name and address of the purchaser of the property, amount bid, amount of the note secured by the deed of trust with interest and the costs of the sale. Instead of turning over the surplus to plaintiff as grantor in the deed of trust under which the sale occurred, defendant credited said surplus of $2839.14 on another note for five thousand dollars held by Jacob S. McFerren, which note had been executed by Mary C. Baker and James Baker to Joseph Dormitzer, November 5, 1885, and according to the recitals in the abstract, had been secured by a deed of trust of the same date, executed by said Bakers to Edward Rowse, as trustee for the benefit of said Dormitzer, the *cestui que trust,* and conveying the same property conveyed in the deed of trust under which defendant had sold. Though the note for five thousand dollars described in the Baker deed of trust had been made to Joseph Dormitzer, it was held by Jacob S. McFerren at the date of the foreclosure sale on July 5, 1907, who also, at that time, held the note for five hundred dollars, secured by the foreclosed deed of trust, the latter note having been assigned to him by the original payee, Pingree McFerren. In the answer filed by defendant, he admitted it was his duty to pay and distribute the proceeds of the foreclosure sale in ac-

cordance with the provisions of the deed of trust under which he sold, denied he refused, failed or neglected to pay over to plaintiff the surplus money left after paying all costs and expenses incident to the sale and the debt secured by the instrument foreclosed, and then alleged Jacob S. McFerren was the owner and holder of another deed of trust on the property foreclosed; that plaintiff had assumed and agreed to pay said deed of trust and had failed and neglected to do so, and the note secured by it and the interest thereon were due and payable at the time of the foreclosure. Defendant alleged he gave plaintiff credit on the five thousand dollar note for the surplus proceeds of the sale and that this was in conformity to his duty as trustee, because plaintiff had assumed and agreed to pay said debt of five thousand dollars, but had failed and neglected to pay it. The reply denied the assumption by plaintiff of the five thousand dollar note and deed of trust or agreement by him to pay the same, and denied defendant was authorized to give credit on said note for the surplus arising from the sale, or was authorized to pay said surplus to any one but plaintiff. Plaintiff had purchased the property covered by the two deeds of trust from Pingree McFerren and Mary C. McFerren, his wife, and they had conveyed the same to plaintiff by a warranty deed dated October 11, 1905, wherein the grantors warranted the title to the property "against the lawful claims of all persons whomsoever excepting the taxes for the year 1906 and thereafter, and a certain deed of trust for five thousand dollars recorded in book 770, page 398, of the Recorder of Deeds' office in the city of St. Louis, Missouri." The incumbrance excepted out of the warranty was the Baker deed of trust for five thousand dollars. Plaintiff testified he knew of the existence of said incubrance when he purchased the property, and defendant's counsel attempted to prove plaintiff had endeavored to obtain an extension of that incumbrance from Jacob S. McFerren to whom the note

had been assigned by Dormitzer, but this evidence was excluded. Jacob S. McFerren presented the Baker note and deed of trust to defendant on the morning of the sale, and defendant gave credit for the surplus on the note and took a receipt for the credit from Jacob S. McFerren. There had been a foreclosure sale under the first, or Baker, deed of trust, prior to the sale by defendant under the deed of trust to secure the note for five hundred dollars, but defendant testified he regarded the sale under the Baker deed of trust as invalid. Plaintiff was asked while on the witness stand whether he knew, when he purchased the property, of the Baker incumbrance for five thousand dollars and whether he ever made any effort to pay it off. Against the objection of his counsel he was compelled to respond to these questions, and answered that he knew of the incumbrance when he bought and had not endeavored to discharge it. He was also compelled to answer regarding what he paid for the property, and in answering said he did not definitely remember, as there was "considerable detail," and his father had attended to the transaction as his agent. He was then asked whether he had paid any money on the purchase price and, after some discussion of an objection to the question, the court said the witness had gone far enough into that matter. The purpose of the inquiry was stated thus by defendant's attorney: "It might become important for the reason it might be shown that this plaintiff had no interest whatever at any time in this property, no real interest, and it might appear that he was only used in this matter as a convenience." Defendant testified as follows regarding the reason why he paid Jacob S. McFerren the surplus of the proceeds realized by selling under the deed of trust wherein he was trustee:

"Now, Mr. Sheppard, you may state why you declined to pay over to Mr. Jones the surplus, as there claimed, arising out of the sale of the property? A. I considered that the foreclosure of the first deed of trust

was not a legal sale and that the property was still —the title, the ownership to that first deed of trust and note, was still in McFerren. The title companies would not pass upon the title. . . . And I considered, as I said, that McFerren was still the legal holder of the five thousand dollar claim against this property; that he had an equitable interest in any surplus created by the sale of the second deed of trust under the first. These were my reasons for making that payment of that surplus on that first deed of trust note."

The last part of the answer was struck out on motion of defendant's counsel. The court gave judgment for plaintiff and defendant appealed, assigning for errors the exclusion of the first or Baker deed of trust and note when offered by defendant, not permitting defendant to testify why he sold under the second deed of trust or the cause of that sale, and in excluding evidence regarding what plaintiff paid for the property when he purchased it from Pingree McFerren. The last assignment of error is in this form: "It was competent to show plaintiff had assumed the payment of the first note also, and had agreed the fund resulting from the sale of the property should be applied to the payment of both of them."

GOODE, J. (after stating the facts).—To make clear the theory of counsel for defendant, it should be stated they assign as error the exclusion of the Baker deed of trust and note and testimony regarding why defendant foreclosed under the second or Pingree McFerren deed of trust, upon the notion that there had been a valid foreclosure of the Baker instrument which deprived plaintiff as grantor in the second incumbrance, of right to the surplus proceeds arising from the foreclosure of the second one. It is obvious this theory is the antithesis of the one under which defendant acted in turning over the surplus to Jacob S. Mc-

Ferren, as pleaded in the answer and told by him in his testimony. He stated he paid the surplus to Jacob S. McFerren because he thought the attempted foreclosure of the Baker deed of trust was invalid and therefore McFerren was left with a lien for five thousand dollars against the property and, in consequence, was entitled to receive the surplus. This, too, was the purport of his excluded testimony. But now his counsel contend the foreclosure of the first deed of trust was valid and operated to exclude plaintiff from any participation in the surplus proceeds of the foreclosure of the second one, by transferring the right to those proceeds, in equity, over to Jacob S. McFerren. We remark upon this contention that the only evidence offered to prove the Baker deed of trust had been foreclosed, was an indorsement across the face of the note it secured, made by a deputy sheriff, which recited the note had been satisfied by sale made June 28, 1906, under a deed of trust securing the same. Whether Jacob S. McFerren purchased at the first foreclosure sale and the trustee conveyed the title to him by deed, or attempted to do so, was not offered in proof. Hence, if we allow, for argument's sake, that a valid foreclosure sale had occurred under the first deed of trust, this fact was not supplemented by an offer of evidence which tended to prove McFerren acquired the title to the property, or any greater right to the surplus proceeds of the second foreclosure than he would have as the holder of the note secured by the Baker deed of trust if there had been no sale under it. In other words, nothing was offered to prove defendant did right in paying the surplus to him. Hence, all that remains of this point is the question whether, if there was a good foreclosure of the first incumbrance, that circumstance deprived plaintiff of right to the surplus proceeds accruing from the sale under the second one, and cut out his cause of action against defendant for the surplus. This defense could not be made under the answer, for,

as said, it is in direct opposition to the averments therein, and allegations regarding it could not have been coupled in the answer with the other defense; for proof of the one defense would disprove the other. [Bell v. Campbell, 123 Mo. 1; R. S. 1899, sec. 606.] But if pleaded and proved, it would not have been a good defense. For one thing, if the first sale was valid, then according to the evidence relied on to prove its validity, the debt had been satisfied, and Jacob S. McFerren as holder of a fully paid note was entitled to no credit on it. We will consider the matter more at large. "Ordinarily how a trustee who sells property under a deed of trust shall dispose of the proceeds, must be ascertained from the directions of the instrument, provided these are not in conflict with the law." [2 Jones, Mortgages (6 Ed.), sec. 1927.] There were no incumbrances junior to the second or Jones deed of trust, and the provision therein requiring a surplus remaining of sale money, after paying the secured debt, expenses of sale, etc., to be paid to plaintiff as mortgagor, was in accord with the law. As between senior lienors and a junior mortgagor, the latter is entitled to the surplus, unless he had relinquished it in the instrument or *aliunde,* as against the former. The theory of the law is that the purchaser at a foreclosure sale buys subject to prior incumbrances; at least unless under some arrangement, the whole fee is sold. [Helweg v. Heitcamp, 20 Mo. 569; Scott v. Shy, 53 Mo. 478; Schmidt v. Smith, 57 Mo. 135; Tanner v. Taussig, 11 Mo. App. 534.] Junior incumbrancers will take precedence over the mortgagor, as regards the right to have their demands paid out of the surplus, because the execution of a junior mortgage amounts to an assignment of the mortgagor's equity of redemption to the junior mortgagee and of the assignor's right in equity to the the surplus in case of a sale under the prior incumbrance. [Cases supra; 2 Jones, sec. 1929; 27 Cyc. 1497.] So will a person to whom a mortgagor conveys

or assigns his equity of redemption by way of sale. [Reid v. Mullins, 47 Mo. 306.] And in this and some other States, if a mortgagor's equity of redemption is sold under execution or otherwise transferred *in invitum* the purchaser will step into his shoes in respect of his right to the surplus proceeds of a foreclosure sale. [27 Cyc. sec. 1497, and note 97; Foster v. Palmer, 37 Mo. 525, 534.] But we can conceive of no principle upon which the foreclosure of a prior mortgage, and especially one not given by the mortgagor in the second incumbrance, but by his grantor, will cut off the right of the second mortgagor to surplus proceeds arising from a sale under the second instrument. Pendency of the first mortgage as an outstanding incumbrance does not have that effect, and we perceive no reason why foreclosing it should have. It stands as an independent transaction, unrelated to the second mortgage or the equity to redeem from the second mortgage, though as a junior lienor he might redeem the first incumbrance, too. Neither is the first incumbrance, or the beneficiary therein, or a purchaser thereunder, in any way connected with the right of the second mortgagor to surplus money accruing from foreclosing the latter lien; at least we do not discern any connection. We find no direct authority on this question, but our opinion appears to be according to the principles underlying the rules regarding what disposition shall be made of surplus proceeds, and Hooper v. Castetter, 45 Neb. 67, is nearly in point. In that case the holder of junior mortgages brought suit to have them foreclosed, and after decree of foreclosure, but before sale under the decree, bought the senior mortgage, and having bid in the property at the foreclosure sale, for more than the amount of the incumbrance foreclosed, sought to have the surplus credited on the senior incumbrance he had acquired. His claim was denied and it was decreed the surplus should go to the intervening creditors of the mortgagor,

less a homestead exemption of two thousand dollars in favor of the latter and his wife, which was ordered paid them.  The Nebraska case is relevant to the point involved here in several respects.  The court pointed out that under the decree of foreclosure, the sheriff could sell only for cash and hence could not accept the debt secured by the senior incumbrance as part payment, though under the law he could give credit on the purchase price for the amount of the debts secured by the deeds foreclosed.  By parity of reasoning, as Sheppard was required to sell for cash, he had no right to give credit on the Baker note.  The Supreme Court of Nebraska said it was optional with the second mortgagee who had foreclosed those instruments, and had purchased the first mortgage whether the latter lien would be merged in the title he acquired by buying at the foreclosure sale; that the question of his right to the surplus did not turn on whether the first incumbrance had merged in his fee, but he had no more right to the surplus by virtue of the assignment to him of the first mortgage than a stranger would have had, or the original first mortgagee.  If the title to the property passed to whomsoever bought at the sale under the Baker mortgage, then the sale under the second or Jones deed of trust, passed no title to the purchaser at the latter sale.  Nevertheless, if Jacob S. McFerren was willing to buy in the property and pay a price for it which would more than discharge the debt secured, the surplus ought to go to plaintiff as mortgagor; because whatever title was purchased or attempted to be purchased, was one which had belonged to him and he had conveyed to the trustee making the sale. An effort is made to treat the case as analogous to one in which the mortgagor in a second mortgage assigns his equity of redemption by way of a third mortgage, or by voluntary sale or sale *in invitum.* But there is no analogy between the two cases.  The foreclosure of a prior mortgage cuts off a junior in-

cumbrance, and any equity to redeem therein, but does not transfer that equity to the purchaser at the sale under the first incumbrance, and therefore does not carry any right to surplus proceeds arising from a sale under a junior incumbrance.

The second error assigned is the refusal of the court to permit defendant to inquire into the consideration plaintiff paid for the property in controversy when he purchased it from Pingree McFerren. The purpose was to prove defendant assumed, as a part of the consideration, the payment of the Baker deed of trust for five thousand dollars. He certainly did not assume it in the deed Pingree McFerren made to him, but such an assumption may be established by parol evidence. [Cook v. Bensieck, 110 Mo. 173; Nelson v. Brown, 140 Mo. 580.] The offer to prove a parol assumption was vague, at best, and really we think the testimony of plaintiff by whom defendant's counsel attempted to prove the fact, amounted to a denial that he had agreed to assume and pay the first mortgage. However, it might be contended he only denied having assumed it in Pingree McFerren's deed to him, and not that he did so verbally. Let us then take for granted he agreed verbally to pay said note as part of the purchase price of the property, and the question occurs whether this fact would be a defense to the present action; whether it justified defendant in ignoring plaintiff's demand for the surplus proceeds of the foreclosure sale and turning the surplus over to Jacob S. McFerren, as holder of the Baker note. No doubt such an assumption of the debt would have given Jacob S. McFerren a right of action against plaintiff personally, or to attach the surplus, or reach it by suit in equity, as the circumstances might warrant. But it was no authority or justification for defendant's turning the surplus over to McFerren; was no equitable assignment of the surplus, such as goes with the assignment of an equity of redemption. Plaintiff might have had ground to contend

the debt had already been paid, or that he had offsets or counterclaims against the holder of the note, or that the money, or part of it, was exempt from execution or liability for the debt, like the surplus in the Nebraska case, or might have preferred to pay other debts with it. To say defendant could hand the money over to Jacob S. McFerren to pay the Baker incumbrance, would amount to investing defendant with the functions of a court and allowing him to settle the rights of the respective parties. He was a stranger to any such agreement, if it was made, and obtained no warrant from it for disposing as he did, of the greater part of the price bid for the property. We are cited to the passage in a treatise wherein it is said the purchaser at a mortgagee's or trustee's sale, takes the property subject to all prior liens and "no part of the proceeds should be applied to their extinguishment in the absence of an express provision therefor in the deed of trust *or other agreement binding on the mortgagor.*" [28 Am. and Eng. Ency. Law (2 Ed.), 833.] The italicised words are argued to mean a trustee is entitled to pay the surplus to the holder of the note secured by a prior mortgage, if the party named as mortgagor in the junior deed of trust under which the trustee sells, had promised payment of the prior mortgage as part of the purchase price of the land when he bought it. We think those words have no such meaning, but refer to contracts *aliunde* the deed under which the trustee sells, by which the grantor in said deed agrees regarding what disposition shall be made of surplus money accruing from a sale and authorizes the application of it to prior liens.

The judgment is affirmed, *Nortoni, J.,* concurring, *Reynolds, P. J.,* having been of counsel, not sitting.