See also *Darrington v. Stulz,* 982 S.W.2d 823 (Mo.App.1998).

James George STULZ and Melissa Claire Stulz, Appellants,

v.

CITIZEN'S BANK AND TRUST COMPANY, Respondent,

Hall Realty Company, Respondent,

Robert Bruce Darrington and Mary Katherine Darrington, Defendants.

No. WD 63755.

Missouri Court of Appeals, Western District.

April 19, 2005.

Martin A. Bauman, St. Joseph, MO, for appellants.

Dana J. Macoubrie, Chillicothe, MO, for respondent Citizen's Bank and Trust Co.

Zell M. Fischer, Rock Port, MO, for respondent Hall Realty Company.

Before HOLLIGER, P.J., BRECKENRIDGE and ELLIS, JJ.

PATRICIA BRECKENRIDGE, Judge.

James and Melissa Stulz appeal the final judgment granting Citizen's Bank and Trust Company's motion to dismiss the Stulzes' claims for wrongful foreclosure and conversion and granting Hall Realty Company's motion to dismiss the Stulzes' claim for conversion. In their first point, the Stulzes assert that the trial court erred in granting Citizen's Bank's motion to dismiss because Citizen's Bank converted surplus funds from a foreclosure sale on a first deed of trust to pay a note that was secured by a second deed of trust, which was not foreclosed upon by the sale. They further contend that they cannot be held personally liable for the note secured by the second deed of trust because the debt was discharged in bankruptcy. In their second point, the Stulzes claim that the trial court erred in granting Hall Realty's motion to dismiss because Hall Realty converted a real estate commission it received from a private sale in a partition proceeding. Specifically, the Stulzes claim that

because this court reversed the trial court's judgment approving the private sale that generated the commission awarded to Hall Realty and they owned one-half of the property sold, they are entitled to one-half of the commission. Because the Stulzes had no right to possess either the surplus funds generated from the foreclosure sale or one-half of the commission awarded to Hall Realty, they had no valid claims of conversion against Citizen's Bank or Hall Realty. Therefore, the judgment of the trial court is affirmed.

### Factual and Procedural Background [1]

On January 6, 1994, the Stulzes purchased from Robert and Mary Katherine Darrington an undivided one-half interest in certain real estate in Grant City in Worth County, generally known as the Grant City Livestock Exchange.[2] The Stulzes financed the purchase by executing a note in favor of Citizen's Bank for $100,000, which was secured by a future advance deed of trust on the property. On July 3, 1995, the Stulzes executed a second note in favor of Citizen's Bank for $40,000. This second note was secured by a second deed of trust on the same property.

On March 21, 1996, the Darringtons filed a petition for partition of the property against the Stulzes and Citizen's Bank. The petition requested a fair partition of the land or that the land be sold and the proceeds divided among the parties. On September 27, 1996, while the partition proceeding was ongoing, the Stulzes filed for bankruptcy. The Stulzes properly listed their interest in the subject property in the bankruptcy proceeding. The bankruptcy court discharged the Stulzes from their debts on January 21, 1997. The

bankruptcy trustee also abandoned its interest in the subject property.

On September 9, 1997, the trial court entered a judgment in partition. The court found that the Darringtons and the Stulzes each owned an undivided one-half interest in the property, with the Stulzes' interest subject to a lien secured by a deed of trust recorded by Citizen's Bank. The court further found that the real estate was not subject to partition in kind and ordered it sold by the sheriff of Worth County on October 24, 1997. The court ordered that the proceeds, after payment of costs and fees, be distributed to the parties according to their respective interests.

On October 3, 1997, the Darringtons filed a motion to set aside the sale because, after the entry of the trial court's judgment in partition, the Darringtons had received an offer from a third party to purchase the property for $310,000. Attached to the motion was a contract for the sale of the property dated September 27, 1997, identifying the Darringtons and Citizen's Bank as the sellers, Dee Lynch as the buyer, and Mr. Darrington as the real estate agent.[3]

Following a hearing on the Darringtons' motion, the trial court entered an order canceling the public sale of the property. The trial court also approved the real estate contract between the Darringtons and Dee Lynch and accepted and deposited in the court registry an earnest money check from Dee Lynch in the amount of $25,000. On January 9, 1998, a check signed by Dee Lynch and made payable to Hall Realty in

---

**1.** Portions of the factual background are taken, without attribution, from this court's decision in *Darrington v. Stulz,* 982 S.W.2d 823 (Mo.App.1998).

**2.** The Darringtons retained an undivided one-half interest in the property.

**3.** Hall Realty employed Mr. Darrington as a real estate agent.

the amount of $285,000 was deposited with the court.

On February 6, 1998, the trial court entered its final judgment ordering the property "voluntarily" sold to Dee Lynch for the sum of $310,000. The judgment conveyed the property to Dee Lynch by sheriff's deed and noted that consent to the sale "had been affirmatively manifested by each party in open court." The judgment further ordered the clerk of the court to distribute the proceeds of the sale after payment of attorney's fees, sheriff's fees, court costs, taxes, and an eight-percent sales commission to Hall Realty.

The Stulzes appealed the trial court's final judgment in partition. They claimed the trial court lacked authority to approve the private sale, distribute the proceeds of the sale, and award costs because the property was sold at a private sale under a real estate contract rather than at a public auction as required by Rule 96 and Chapter 528, RSMo 1994. On December 29, 1998, this court filed its opinion reversing the trial court's judgment. *See Darrington v. Stulz*, 982 S.W.2d 823 (Mo.App. 1998). Specifically, this court held that the trial court erred in ordering a private sale and distributing the proceeds "[b]ecause partition is strictly statutory," and "a partition sale may be effected only in accordance with the procedures set forth in Rule 96 and Chapter 528." *Id.* at 825. "Section 528.590, RSMo 1994, requires that all real estate subject to partition sale be sold by a court-appointed commissioner or by a sheriff at a public auction." [4] *Id.* This court found that, because the "land

was not sold at public auction by the sheriff but at a private sale under a real estate contract," the sale was improper. *Id.* Therefore, this court reversed the trial court's judgment and remanded for further proceedings. *Id.*

Following this court's decision in *Darrington*, on March 18, 1999, the trustee conducted a foreclosure sale, foreclosing on the Stulzes' January 6, 1994 deed of trust. Citizen's Bank purchased the property at the sale. The next day, Citizen's Bank conveyed the property to Dee Lynch by quit claim deed.[5] According to Citizen's Bank's foreclosure sale accounting, the bid at sale was $182,387.78. Of that amount, Citizen's Bank applied $119,589.96 to the January 6, 1994 note and deed of trust being foreclosed; $56,297.82 to the Stulzes' second note and deed of trust dated July 3, 1995; and the balance of $10,391.05 to expenses. A deficiency in the amount of $3,891.05 remained on the second note.

On May 2, 1999, the Stulzes filed a five-count petition.[6] The first three counts of their petition alleged claims against Citizen's Bank for wrongful disclosure, conversion, and negligent misrepresentation. The fourth count alleged conversion by Hall Realty. The final count alleged conversion by the Darringtons. The trial court sustained the Darringtons' motion for summary judgment and dismissed them from the case on July 23, 2003.[7] Thereafter, a trial was held on the remaining counts of the Stulzes' petition. At the conclusion of the Stulzes' case, Citizen's Bank orally moved to dismiss the case.

---

4. Section 528.590 has not been amended since this court's decision in *Darrington*.

5. The Darringtons had previously conveyed their one-half interest in the property to Dee Lynch on January 30, 1998.

6. The Stulzes filed their petition in Buchanan County. The case was eventually transferred to Holt County.

7. The Stulzes do not appeal the trial court's judgment in favor of the Darringtons. Therefore, the Darringtons are not a party to this appeal.

Hall Realty also orally moved to dismiss the case and filed written suggestions in support of its motion. On September 15, 2003, the trial court entered its judgment granting both motions. Thereafter, the Stulzes filed a motion to vacate, reopen, correct, amend, or modify the trial court's judgment. Following a hearing, the trial court overruled the motion. The Stulzes filed this appeal.

## Standard of Review

■ The judgment appealed purports to be a dismissal of the Stulzes' claims, as requested by Citizen's Bank and Hall Realty at the conclusion of the Stulzes' evidence. The proper motion after a plaintiff has completed presentation of the plaintiff's evidence, however, is a "motion for a judgment on the grounds that upon the facts and the law the plaintiff is not entitled to relief." Rule 73.01(b). Despite the improper terminology, the trial court's judgment indicates that it ruled on the merits, after reviewing all the evidence and adjudging the credibility of the Stulzes' sole witness, Mr. Stulz. Because the trial court ruled on the merits, the Stulzes' appeal from the trial court's judgment is from a final determination of the issues on the merits and is governed by Rule 73.01.[8] Therefore, review in this case is not for judging the adequacy of the Stulzes' pleading, as in a motion to dismiss, but under the standard for court-tried cases stated in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). *Pierce v. State, Dep't of Soc. Servs.*, 969 S.W.2d 814, 817 (Mo.App.1998).

This court will affirm the trial court's judgment unless no substantial evidence supports it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy,* 536 S.W.2d at 32. This court reviews the evidence, along with all reasonable inferences, in the light most favorable to the trial court's judgment and disregards all contrary evidence and inferences. *Wildflower Cmty. Ass'n, Inc. v. Rinderknecht,* 25 S.W.3d 530, 534 (Mo. App.2000). As the trier of fact, the trial court determines the credibility of witnesses and is free to believe or disbelieve all or part of the witnesses' testimony. *Ken Cucchi Constr., Inc. v. O'Keefe,* 973 S.W.2d 520, 524 (Mo.App.1998). Because the trial court made no findings of fact, all fact issues "shall be considered as having been found in accordance with the result reached." Rule 73.01(c).

## No Valid Conversion Claim Against Citizen's Bank

■ In their first point, the Stulzes assert that the trial court erred in entering judgment in favor of Citizen's Bank because they had a valid claim against Citizen's Bank in conversion. " 'Conversion is the unauthorized assumption of the right of ownership over the personal property of another to the exclusion of the owner's rights.' " *Walker v. Hanke,* 992 S.W.2d 925, 930 (Mo.App.1999) (citation omitted). Conversion can be proved by demonstrating (1) a tortious taking, (2) " 'any use or appropriation to the use of the person in possession, indicating a claim of right in opposition to [the] owner's rights;' " or (3) " 'refusal to give up possession to the owner on demand, even though the defendant's original possession of the property was proper.' " *Id.* (citation omitted).

8. Rule 73.01 provides, in pertinent part:
    In cases tried without a jury or with an advisory jury:
    . . .
    (b) After the plaintiff has completed presentation of plaintiff's evidence, the defendant may move by motion for a judgment on the grounds that upon the facts and the law the plaintiff is not entitled to relief. The filing of such motion does not constitute a waiver of defendant's right to offer evidence.

■ The Stulzes claim that, after Citizen's Bank conducted a foreclosure sale on the first deed of trust, it converted the surplus funds from that sale to pay off part of the note secured by the second deed of trust. The Stulzes contend that this was improper because the foreclosure sale on the first deed of trust extinguished the second deed of trust. Moreover, they submit that they cannot be held personally liable for the second deed of trust because that debt was discharged in bankruptcy. Therefore, the Stulzes conclude that they are entitled to the surplus funds Citizen's Bank received from the foreclosure sale.

■ "Ordinarily how a trustee who sells property under a deed of trust shall dispose of the proceeds must be ascertained from the directions of the instrument[.]" *Jones v. Shepard*, 145 Mo.App. 470, 122 S.W. 764, 767 (1909). *See also Webster v. Wishon*, 675 F.Supp. 552, 553 (W.D.Mo. 1986) (quoting *Jones*). The first deed of trust in this case, however, provides no guidance as to how surplus funds shall be distributed. The deed simply states that the trustee shall apply "the excess, if any, to the persons legally entitled to receive it." The second deed of trust contains this same language and contains no provision anticipating the contingency of a surplus following foreclosure of a prior lien. When a deed of trust does not contain such a provision, distribution of surplus funds is "controlled by whatever the law may provide for in these circumstances." *Id.*

In Missouri, it has been the rule since as early as 1855 that junior lienholders are entitled to surplus proceeds from a foreclosure sale on a senior lien. *See e.g., Helweg v. Heitcamp*, 20 Mo. 569, 1855 WL 5260 (1855) (surplus funds "must be applied, after payment of the debt and cost of sale by trustee under the second deed of trust, towards the payment of the debt" secured by the third deed of trust); *Strawbridge v.*

*Clark*, 52 Mo. 21, 22, 1873 WL 7832 (1873) ("Where there are several liens on a tract of land, and it is sold under one of them, the surplus after paying the lien under which it was sold, belongs in equity to the next subsequent liens in their order of priority."). The court in *Jones* similarly found:

> Junior incumbrancers will take precedence over the mortgagor, as regards the right to have their demands paid out of the surplus, because the execution of a junior mortgage amounts to an assignment of the mortgagor's equity of redemption to the junior mortgagee and of the assignor's right in equity to the surplus in case of a sale under the prior incumbrance.

122 S.W. at 767. *See also Warner v. Veitch*, 2 Mo.App. 459, 462, 1876 WL 9650 (1876) ("A person to whom land has been conveyed subject to a deed of trust, or the *cestui que trust* where the conveyance is a second deed of trust, becomes thereby the legal representative of the grantor, and, as such, is entitled to receive the surplus funds remaining after the foreclosure.").

■ The Stulzes, nevertheless, argue that they are entitled to the surplus proceeds from the foreclosure sale for two reasons: (1) the bankruptcy court discharged their debts and, therefore, Citizen's Bank is unable to make a valid claim against them personally; and (2) the foreclosure sale extinguished the second deed of trust. The debtors in *In re Roberts*, 91 B.R. 57 (Bankr.E.D.Mo.1988), made similar claims. In *Roberts*, the debtors executed a first deed of trust on real property in favor of Palmyra Savings and Building Association to secure a loan. 91 B.R. at 58. Thereafter, the debtors executed a second deed of trust on the same property in favor of State Street Bank and Trust Company. *Id.* Eventually, the debtors filed for bankruptcy. *Id.* After the debtors

filed for bankruptcy, Palmyra was granted relief from the automatic stay to foreclose on the property under the terms of its deed of trust. *Id.* The foreclosure sale realized a surplus, which the trustee paid directly to the debtors under the terms of its deed of trust. *Id.* Thereafter, the bankruptcy court issued an injunction ordering the debtors not to spend or otherwise dispose of the surplus. *Id.* The bankruptcy trustee then sought to recover the excess proceeds. *Id.* State Street Bank was joined as a party defendant. *Id.* The bankruptcy court awarded the excess proceeds to State Street Bank, and the debtors appealed that decision. *Id.* at 59.

In rejecting the debtors' argument that the foreclosure sale extinguished State Street Bank's second deed of trust, which was a junior encumbrance, the court found that the "foreclosure sale cannot extinguish the security agreement between State Street [Bank] and debtors" because "State Street [Bank] is not seeking money directly from debtors, as indeed bankruptcy prevents it from doing." *Id.* at 60. Rather, the lender was "merely seeking to enforce its agreement with the debtors, whereby State Street [Bank] received an interest in the debtors' property." *Id.* The court noted that such an interest "follows the property until a foreclosure sale occurs," at which point, "if proceeds remain above satisfaction of the obligation to the holder of the first deed of trust," the holder of the junior lien is entitled to those funds. *Id. See also In re Reid,* 73 B.R. 88, 90 (Bankr.E.D.Mo.1987) (junior lienholder has right superior to that of bankruptcy trustee to excess proceeds from foreclosure sale on debtor's property); *Boedeker v. Jordan (In re Jordan),* 79 B.R. 843, 844 (Bankr.E.D.Mo.1986) (junior lienholder

has right superior to that of debtor in bankruptcy to excess proceeds from foreclosure sale of debtor's property).

Similarly, in this case, in applying the surplus proceeds from the foreclosure sale on the first deed of trust to the note secured by the Stulzes' second deed of trust, Citizen's Bank is not seeking money directly from the Stulzes. *Roberts,* 91 B.R. at 60. *See also Boedeker,* 79 B.R. at 844 (lender not claiming funds from debtor personally, but claiming surplus from foreclosure sale). Rather, Citizen's Bank "is merely seeking to enforce its agreement with the [Stulzes], whereby [Citizen's Bank] received an interest in the [Stulzes'] property." *Roberts,* 91 B.R. at 60. Discharge in bankruptcy has no effect on Citizen's Bank's right to the surplus amount. *Boedeker,* 79 B.R. at 844.

While the Stulzes are correct that a foreclosure sale extinguishes junior liens,[9] such a result "has no relevance as to how surplus proceeds are to be distributed to creditors after the foreclosure sale." *Reid,* 73 B.R. at 90. "[T]he fact that a purchaser at a foreclosure sale takes the real estate free of junior liens in no way impairs the junior lienor's right to the surplus, if any exists." *Id.* at 91. The surplus proceeds from the sale of the property under the first deed of trust is Citizen's Bank's only possible means of repayment on its loan to the Stulzes. *Roberts,* 91 B.R. at 60. Because of the foreclosure sale, Citizen's Bank cannot recover by way of continuing its lien on the property. *Id.* And, because the Stulzes have been granted a discharge in bankruptcy, Citizen's Bank will not be able to recover from them personally. *Id.* The Stulzes "should not be allowed to extinguish their debt to [Citizen's Bank] and keep the excess proceeds

---

9. *See e.g., Brask v. Bank of St. Louis,* 533 S.W.2d 223, 227 (Mo.App.1975) ("A foreclosure sale passes title to the purchaser as of the date of the deed of trust and extinguishes the inferior encumbrances made by the grantor subsequent to that date.").

from the foreclosure sale." *Id.* The result urged by the Stulzes would produce the "anomalous and inequitable result that the mortgagor, who could not himself sell the property and realize on [the secured creditor's] security interest[,] may attain it if the sale is made by a senior encumbrancer." *Pioneer Credit Corp. v. Bloomberg,* 323 F.2d 992, 994 (1st Cir.1963). The Stulzes should not be allowed to realize a gain at the expense of Citizen's Bank. *See Boedeker,* 79 B.R. at 844; *Webster,* 675 F.Supp. at 554. Thus, because the Stulzes had no right to possess the surplus funds, they had no valid claim of conversion against Citizen's Bank for Citizen's Bank's refusal to give up possession of the funds to the Stulzes. *See Walker,* 992 S.W.2d at 930. Accordingly, the trial court did not err in granting judgment in favor of Citizen's Bank. The Stulzes' first point is denied.

### No Valid Conversion Claim Against Hall Realty

■ In their second point, the Stulzes assert that the trial court erred in entering judgment in favor of Hall Realty because they had a valid conversion claim against Hall Realty. In particular, they contend Hall Realty improperly kept the real estate commission awarded it from the partition proceeding because this court reversed the trial court's judgment approving the private sale. The Stulzes argue they are entitled to half of the commission paid to Hall Realty, or $12,400, because those funds were "for the sale of all of the real estate" and they "owned one-half of that real estate."

Under the private sale in the partition proceeding, Dee Lynch purchased the property for $310,000. The trial court entered judgment distributing the $310,000 as follows: $24,800 to Hall Realty Company; $132,924.70 to the Darringtons;

$132,924.71 to Citizen's Bank; and the remaining $19,350.59 to cover costs, taxes, and attorney's fees. No part of the proceeds was awarded to the Stulzes. Nevertheless, the Stulzes now claim they are entitled to receive one-half of the $24,800 paid to Hall Realty because this court reversed the judgment approving the private sale. The Stulzes' argument is illogical.

When this court reversed the judgment approving the private sale in the partition proceeding, the property reverted back to the owners, the Darringtons and the Stulzes, and the purchase price should have been returned to the *purchaser,* Dee Lynch. The Stulzes did not pay any portion of the purchase price and, therefore, are not entitled to a return of any of those funds. In other words, the Stulzes, who were not the purchasers of the property in the partition proceeding, have no claim to a return of any portion of the purchase price. Only the purchaser, Dee Lynch, would be entitled to a return of the purchase price as a result of vacating the improper sale. Consequently, the Stulzes have no right to possess one-half of the commission paid to Hall Realty and, therefore, no claim for conversion against Hall Realty for its failure to return the funds following this court's prior decision vacating the judgment approving the private sale in the partition proceeding. *See Walker,* 992 S.W.2d at 930. The Stulzes' second point is denied.

The trial court's judgment is affirmed.

All concur.