William G. BRASK et al.,
Plaintiffs-Respondents,

v.

BANK OF ST. LOUIS et al.,
Defendants-Appellants.

Nos. 36434, 36457, 36475.

Missouri Court of Appeals,
St. Louis District,
Division Three.

Nov. 18, 1975.

Motion for Rehearing or Transfer
Denied Jan. 23, 1976.

Application to Transfer Denied
March 8, 1976.

Burton H. Shostak, St. Louis, for defendant-appellant Bank of St. Louis.

Albert E. Schoenbeck, Steven M. Schoenbeck, St. Louis, for defendant-appellant Prudential Savings & Loan Assn.

Harry G. Neill, Jr., St. Louis, for defendant-appellant Polaski Savings & Loan Assn.

Julius H. Berg, St. Louis, for plaintiffs-respondents.

GUNN, Judge.

This appeal involves a declaratory judgment action seeking determination under § 448.080 of the Missouri Condominium Property Act[1] of the priority of rights between condominium common expense liens and prior recorded deed of trust encumbrances. The trial court found that the common expense liens were superior to the deed of trust encumbrances. The deed of trust holders appeal, urging that the trial court's decision is contrary to the express statutory language of § 448.080(2) RSMo 1969. We find that the trial court's decision is contradictory to § 448.080 and reverse the judgment.

The facts have been stipulated. Plaintiffs-respondents are the duly elected board of managers of Hazelcrest I and II Condominium located in St. Louis County. Defendants-appellants Bank of St. Louis, Pulaski Savings & Loan Association and Prudential Savings and Loan Association are lending institutions and holders of deeds of trust on certain units in Hazelcrest I & II Condominium. The other defendants-appellants are unit owners of the condominium, having purchased their units after deed of trust foreclosure. The Hazelcrest Condominium declaration was recorded on October 21, 1964 in accordance with the Missouri Condominium Property Act. By virtue of the recorded declaration, each year plaintiffs have assessed an estimated cost amount to each unit owner to cover the common expense costs incurred by the condominium management for the benefit of all the unit owners.[2] The assessment for the common expense costs is made in proportion to each owner's percentage of ownership in the common elements.[3] The Ha-

zelcrest Condominium declaration contains a provision taken from the matrix of § 448.080(2) establishing a lien for common expenses on any unit of the property for which the common expense has not been paid. § 448.080(2), in pertinent part, provides:

"2. If any unit owner fails or refuses to make any payment of the common expenses when due, the amount thereof shall constitute a lien on the interest of such unit owner in the property, and upon the recording of notice thereof by the manager or board of managers shall be a lien upon such unit owner's interest in the property prior to all other liens and encumbrances, recorded or unrecorded; except only taxes, special assessments and special taxes theretofore or thereafter levied by any political subdivision or municipal corporation of this state and other state or federal taxes which by the law are a lien on the interest of such unit owner prior to pre-existing recorded encumbrances thereon, and encumbrances on the interest of such unit owner recorded prior to the date such notice is recorded which by law would be a lien thereon prior to subsequently recorded encumbrances, but only if such prior recorded encumbrance contains a statement of a mailing address in the State of Missouri where notice may be mailed to the encumbrancer thereunder. . . ."

The plaintiffs, as board of managers of Hazelcrest Condominium, have filed notice whenever a unit owner has failed to pay an assessment for common expenses when due in order to establish a lien for such expenses. But substantially all of the condominium units are subject to recorded deeds of trust to secure purchase money and other notes for borrowed money with each such deed of trust containing the § 448.080(2)

1. §§ 448.010–448.220 RSMo 1969.

2. Estimated costs include costs of wages, materials, insurance, services and supplies required for the rendering of all services, together with a reserve for contingencies and replacement.

3. "Common elements" are defined in § 448.-010(1) as "all portions of the property except the units."

requisite statement of a Missouri mailing address. The particular condominium units which are involved in this case are encumbered by deeds of trust held by the defendant lending institutions, and there have been foreclosures on the deeds of trust by defendant lending institutions upon default by previous unit owners. It has been by virtue of the deed of trust foreclosures that defendants Life Insurance Company of Virginia, Mary A. Williams, S.B. Spizman and Larry May Realty Co. have become owners of the particular condominium units here involved. Subsequent to the recording of the deeds of trust held by defendants, the plaintiffs recorded appropriate notice of assessment for common expenses due and owing on the particular units. Critical to the determination of this case is the fact that each deed of trust foreclosed by the defendant lending institutions had been recorded in compliance with § 448.080(2) and the Hazelcrest Condominium declaration prior to the recording by plaintiffs of the notice of assessments due and owing for common expenses on the units involved.[4] None of the assessments for common expenses due and owing at the time of the foreclosure sales has been paid. The issue which we must decide is which encumbrance has priority—1) the prior recorded deeds of trust; or 2) the later recorded lien for common expenses filed at the time the annual assessments became due and owing?

The trial court declared that the liens for common expenses held by plaintiffs were prior in right. The trial court made the following findings which served as a basis for its conclusion: 1) that the deeds of trust were subordinate to the common expense liens since the latter were covenants running with the land by which each grantee was bound pursuant to the condominium declaration; 2) that by reason of the recorded condominium declaration, the condominium units were subject to an inchoate lien for all common expense assessments, and when the assessments were made, the liens related back to the time of the recording of the declaration; 3) that the deed of trust foreclosure sales did not extinguish or otherwise affect the superior common expense liens held by plaintiffs; 4) that the defendant lending institutions acquired their deed of trust encumbrances with the knowledge that the common expense assessments ran with the land and that the common expense assessments were thereby superior in right to the deeds of trust; 5) that the mere fact that the deeds of trust contained statements of address where notice of subsequent encumbrances could be mailed did not affect plaintiffs' liens for common expenses. In reaching its conclusion the trial court was influenced by the following provision of the condominium declaration which was recorded prior to the recording of defendants' deeds of trust.

"Each grantee . . . , by the acceptance of a deed or conveyance, or each purchaser, accepts the same subject to all restrictions, conditions, covenants, reservations, options, liens and charges, and the jurisdiction, rights and powers created or reserved by this Declaration or to which this Declaration is subject, and all rights, benefits and privileges of every character hereby granted, created, reserved or declared, and all impositions and obligations hereby imposed shall be deemed and taken to be covenants running with the land, and shall bind any person having at any time any interest or estate in said land, and shall inure to the benefit of such unit owner in like manner as though the provisions of this Declaration were recited and stipulated at length in each and every deed of conveyance."

■ However, the trial court's conclusions and reliance on the foregoing provisions of the condominium declaration are contrary to the perspicuous language of

---

4. However, the foreclosure sales were subsequent in time to the recording of the notice of assessments due and owing.

§ 448.080(2) and the concomitant declaration provisions taken from the paradigm of § 448.080(2). Section 448.080(2) expressly sets forth the priorities between the two types of encumbrances involved in this case. It is palpable from the following language of § 448.080(2) that the encumbrances of the defendant deed of trust holders under consideration here have priority over plaintiffs' lien for common expense assessments:

> "If any unit owner fails or refuses to make any payment of the common expenses when due, the amount thereof shall constitute a lien on the interest of such unit owner in the property, and upon the recording of notice thereof by the manager or board of managers shall be a lien upon such unit owner's interest in the property prior to all other liens and encumbrances, recorded or unrecorded; *except * * * encumbrances on the interest of such unit owner recorded prior to the date such notice is recorded which by law would be a lien thereon prior to subsequently recorded encumbrances, but only if such prior recorded encumbrance contains a statement of a mailing address in the State of Missouri where notice may be mailed to the encumbrancer thereunder. * * *"* (emphasis added)

The deed of trust encumbrances held by defendant lending institutions were recorded prior to the date that plaintiffs recorded the notice of failure of payment of common expenses, and the recorded deeds of trust contain the requisite statement of a Missouri mailing address. Hence, under § 448.-080(2), priority is given to the holders of encumbrances (in this case, defendant lending institutions) who record notices of their encumbrances prior to the date the common expense lien is recorded. The only proviso is that the prior recorded encumbrances contain a statement of a mailing address in Missouri where notice may be mailed, as each deed of trust does here. The commentators also agree that the Missouri Condominium Property Act gives priority to prior recorded encumbrances with the required

mailing address. Ewing, Condominium in Missouri, Legal and Practical Aspects 20 J. of Mo.Bar, 65, 67 (1964); Comment, Missouri Condominium Property Act of 1963, 29 Mo.L.Rev. 238, 242 (1964). See Walbran, Condominium: Its Economic Functions, 30 Mo.L.Rev. 531, 562 (1965). Plaintiffs do not appear to question the authority of the State to establish priorities among competing interests. And as said in Condominium: Its Economic Functions, supra, at 555:

> "Tax liens, mortgage liens, and mechanics' liens, to name only the most obvious, will be competing with the common expense lien for payment from the value of the defaulting owner's unit. It is within the power of the state to determine, at least for future liens, the order in which these liens shall be paid."

The Missouri legislature has spoken and determined that the priority of encumbrances lies, in this case, with the prior recorded deeds of trust over subsequently recorded notices of common expenses due and owing.

■■  The plain meaning of § 448.080(2) and its priority provisions were not circumvented or changed by the declaration relied on by the trial court. It is true that defendant lending institutions took their interests with notice of possible future liens for unpaid common expenses arising when the annual assessments became due, for § 448.080 establishes such liens. But under the statute, the notice is that a lien *will arise* when a unit owner fails to make payment for common expenses "when due," and priority over some encumbrances *will result* "upon the recording of notices thereof by the manager or board of managers." The recording "thereof" refers to the filing of notices of the lien arising from nonpayment of common expenses "when due." The statute specifically provides for recording of the assessment *after* a unit owner has defaulted in payment of common expenses. It is then that the lien attaches, not before. The statute is clear and unam-

biguous, and in construing § 448.080 we must determine the legislative intent by ascribing the plain and ordinary meaning to the language used. *State ex rel. Zoological Pk. Subd. of St. Louis v. Jordan,* 521 S.W.2d 369 (Mo.1975); *Pedroli v. Missouri Pacific RR,* 524 S.W.2d 882 (Mo.App.1975); *Hill v. Missouri Dept. of Public Health & Welfare,* 520 S.W.2d 182 (Mo.App.1975).

■ By seeking to expand their interests beyond what is afforded by § 448.080, plaintiffs are in effect arguing that they are entitled to an equitable or contractual lien. An equitable lien remedy is not available for plaintiffs when they have, as here, their remedy at law under a statutory lien. *Dean & Hancock v. O'Bryan,* 290 S.W. 641, 643 (Mo.App.1927); *Crowder Bros. v. Burlington Elevator Co.,* 176 Mo.App. 657, 159 S.W. 741, 745 (1913). The equitable lien doctrine applies only in cases where the law does not provide adequate remedy and justice would suffer without equitable relief. *Wilkinson v. Tarwater,* 393 S.W.2d 538, 542 (Mo.1965); *Hahn v. Hahn,* 297 S.W.2d 559, 565 (Mo. banc 1957). Plaintiffs' protection is § 448.080.

Plaintiffs also argue that despite the statute the legislature could not have intended to give a prior recorded encumbrance priority over a common expense lien merely because the former included a mailing address. Plaintiffs argue that such an instruction would be absurd in the light of the preliminary language of § 448.080 indicating that the legislature intended to make most liens inferior to common expense liens. But we cannot ignore the plain and unambiguous language of § 448.080. *Pedroli v. Missouri Pacific RR,* supra; *State ex rel. School Dist. of Kansas City v. Young,* 519 S.W.2d 328 (Mo.App.1975). Nor do we believe that the priorities established by the legislature were illogical or inadvertent as plaintiffs allege, in that money lenders are thereby encouraged to make credit available for prospective condominium buyers. See Missouri Condominium Property Act of 1963, supra, at 242; Condominium: Its Economic Functions, supra, at 556.

■ The final point we consider and which debouches from our previous conclusions is the effect of the foreclosures of the deeds of trust on the junior liens for common expenses. Inasmuch as the Condominium Property Act treats a condominium as real property in all respects, the general rule regarding real property liens thereby applies. See Condominium: Its Economic Functions, supra, at 557–558. A foreclosure sale passes title to the purchaser as of the date of the deed of trust and extinguishes the inferior encumbrances made by the grantor subsequent to that date. *Sipes v. Kansas City Title Insurance Co.,* 372 S.W.2d 478, 479 (Mo.App.1963); *S. S. Kresge Co. v. Shankman,* 240 Mo.App. 639, 212 S.W.2d 794, 801 (1948); *Roosevelt Hotel Corporation v. Williams,* 227 Mo.App. 1063, 56 S.W.2d 801–802 (1933). Therefore, subordinate lienors must intervene at the time of the foreclosure sale to protect their lien interests.

■ We adjudge and declare that the prior recorded deeds of trust by defendant lending institutions were prior in right to the common expense liens held by plaintiffs. And where there was a failure to intervene, the deed of trust foreclosure sales extinguished the rights of the existing common expense liens.

The judgment is reversed.

SIMEONE, P. J., and McMILLIAN, J., concur.