598 So.2d 1074 (1992)
RESOLUTION TRUST CORPORATION as Conservator for First Federal Savings and Loan Association of Seminole County, F.A., Appellant,
v.
NIAGARA ASSET CORPORATION, as the Custodian for FDIC as the Receiver for Goldome, Austin Guirlinger, Lakewood, Ltd., a Florida limited partnership, and Cardinal Industries of Florida, Inc., a Florida corporation, Appellees.
No. 91-00677.
District Court of Appeal of Florida, Second District.
May 8, 1992.
*1075 George B. Wallace of Moncrief, Reid & Wallace, P.A., Sanford, for appellant.
Michael P. Brundage, Russell S. Bogue, III, and David S. Jennis of Holland & Knight, Tampa, for appellee Niagara Asset Corp.
Richard W. Taylor of Taylor and Early, DeLand, for appellee Austin Guirlinger.
No appearance for appellees Lakewood, Ltd. and Cardinal Industries of Florida, Inc.
PARKER, Judge.
Resolution Trust Corporation as Conservator for First Federal Savings and Loan Association of Seminole County, F.A. (First Federal) appeals a summary final judgment of foreclosure in favor of Goldome, a New York chartered bank, which now has a receiver, Niagara Asset Corporation, a custodian for the Federal Deposit Insurance Corporation. We reverse the summary final judgment of foreclosure, which declares Goldome's recorded mortgage superior to a recorded mortgage of First Federal.
Lakewood Limited (Lakewood), a Florida limited partnership, owned property in Brandon, Florida, called Lakewood Apartments. Cardinal Industries of Florida, Inc. (Cardinal) is Lakewood's general partner. Austin Guirlinger was the president of Cardinal. The following dates and activities are necessary to understand this case:
06/81  Lakewood delivered a first mortgage to Sunshine State Savings and Loan of Plant City, Florida, in the amount of $1,290,000, and Sunshine State recorded this mortgage.
09/14/81  Lakewood delivered a second mortgage to Cardinal in the amount of $400,000.
09/29/83  Goldome Realty Credit Corporation (Goldome Credit), a wholly owned subsidiary and servicing agent of Goldome, provided construction financing to Lakewood in the amount of $1,475,000, which satisfied the Sunshine State Savings and Loan mortgage.
09/29/83  Goldome Credit recorded this new first mortgage.
09/01/86  Cardinal assigned its second mortgage for $400,000 to First Federal.
09/01/86  Guirlinger delivered to First Federal a personal guarantee on the second mortgage for $400,000.
09/03/86  The second mortgage in favor of Cardinal was recorded.
10/07/86  The assignment of the second mortgage in favor of Cardinal to First Federal was recorded.
12/07/88  Cardinal executed a satisfaction and release of its second mortgage.[1]
12/08/88  Lakewood executed a note and mortgage in favor of Cardinal Industries Mortgage Company, an Ohio corporation, (Cardinal Industries) in the amount of $1,500,000, which was recorded on December 14, 1988.
12/09/88  Cardinal Industries assigned the $1,500,000 mortgage to Goldome.
12/13/88  Goldome Credit executed a satisfaction and release of the first mortgage recorded September 29, 1983.
12/14/88  Cardinal's satisfaction and release of its second mortgage was recorded.
12/14/88  The assignment of the $1,500,000 mortgage from Cardinal Industries to Goldome was recorded.
12/19/88  Goldome Credit's satisfaction of mortgage dated December 13, 1988, was recorded.
09/01/88  Goldome filed for mortgage foreclosure against Lakewood.
*1076 Goldome provided the funds for the latest note of $1,500,000.[2] The proceeds were split as follows: $1,452,394.34 satisfied the Goldome Credit mortgage, $45,355.66 was provided to Lakewood for operating expenses, and $2,250.00 was disbursed for other expenditures.
Both Goldome and First Federal filed motions for summary final judgment, each arguing that it was entitled to a judgment of foreclosure and that its mortgage had priority over the other's. After hearing arguments, the trial court concluded that Goldome's mortgage was superior because: (1) First Federal's second mortgage contained a subordination provision which subordinated the second mortgage to Goldome's mortgage; and (2) all parties to the transaction intended the $1,500,000 mortgage to be a renewal mortgage which was superior to all other existing liens. The trial court then entered summary final judgment of foreclosure in favor of Goldome. We reverse.
The trial court's first finding refers to paragraph 17 of First Federal's second mortgage[3], which states:
17. The Mortgagor, at any time and for any reason whatsoever, reserves the absolute right and discretion to cause the Mortgage to be subordinated in favor of a new first mortgage, provided that the new first mortgage does not exceed the amount of the original first mortgage referred to above, or, if such new first mortgage be for a higher amount, the excess is paid on the Mortgage Note (on a prorata [sic] basis), which is secured by this Mortgage. Further, in the event Mortgagor desires to sell the premises, this Mortgage shall be released and discharged of record, provided, however, that the unpaid principal amount, together with accrued minimum interest (as defined in the Note) shall be paid. In connection with the required subordination and release, as aforesaid, Mortgagee, its successors and assigns, shall execute the required documents and instruments within five (5) days of presentment of the appropriate instruments by Mortgagor. In the event Mortgagee fails or refuses to execute such instrument, (and deliver same to Mortgagor) Mortgagor shall have the right and authority to execute such for and on behalf of Mortgagee. The authority and right on the part of Mortgagor shall be a power of attorney and shall be deemed coupled with an interest. Neither the attempted termination of said power of attorney or the death, incapacity or bankruptcy of the Mortgagee shall affect said power of attorney and right on the part of the Mortgagor.
This paragraph establishes that Lakewood had the absolute right to cause the second mortgage to be subordinated to a new first mortgage, and it sets forth the procedure for subordinating this second mortgage in favor of a new first mortgage. It further states that if the new first mortgage exceeds the amount of the original first mortgage the excess is to be paid on the second mortgage note on a pro rata basis. The "original first mortgage referred to above" referenced in paragraph 17 of this document is directed to the first mortgage created in 1981 by Lakewood in favor of Sunshine State Federal Savings and Loan.
We conclude that the trial court erred in its first finding because the evidence does not support that the mortgagor, Lakewood, presented First Federal with any instruments to initiate this subordination or executed the instruments on behalf of First Federal. Once that procedure is complete, for purposes of summary judgment, there appears to be a legal issue concerning the interpretation of paragraph 17, and then the factual application of what net proceeds, if any, First Federal may be entitled to receive when any new mortgage exceeds the original first mortgage in the amount of $1,290,000.
*1077 As to the trial court's second finding, Florida does recognize that a new mortgage given as a renewal of an old mortgage can take priority over an intervening mortgage. See Federal Land Bank of Columbia v. Godwin, 107 Fla. 537, 145 So. 883 (1933). However, in determining whether a second mortgage is taken as a renewal or in payment and satisfaction of the first mortgage, the court must look to the intent of the parties. The court must also consider whether the parties are the same and whether the mortgage is taken on the same land and for the same amount, except interest and costs. Godwin, 145 So. at 884-85. "[W]here the new mortgage is given to a different person from whom the debtor borrowed the money to pay off the old mortgage," the new mortgage is not a renewal of the old mortgage. Godwin, 145 So. at 885 (quoting 5 Thompson on Real Property, § 4263, p. 353).
Although, Kathryn M. Mulloy, Goldome's vice president of portfolio restructuring, swore in an affidavit that the purpose of executing the mortgage on December 8, 1988, was to renew the mortgage executed in 1983, the title of the 1988 mortgage, "Mortgage, Assignment of Rents and Security Agreement," does not indicate that fact. There is no language within the mortgage itself that refers to the earlier mortgage or that states that it is a renewal of an existing mortgage. Additionally, Goldome admits that it had imposed a requirement that the second mortgage be satisfied before its funds would be provided. Intent is a question of fact and is not an issue to be decided in a summary judgment proceeding under these circumstances. Cf. Rebman v. Flagship First Nat'l Bank of Highlands County, 472 So.2d 1360 (Fla. 2d DCA 1985) (question of intent is one of law for the court when there is no conflict in material facts). The circumstances surrounding the 1988 mortgage in this case do not show conclusively that it was the intent of the parties to take a renewal mortgage.
Moreover, as far as this record indicates, the 1983 mortgage involved Goldome Credit as mortgagee and Lakewood as mortgagor. The 1988 mortgage is between Lakewood and Cardinal Industries Mortgage Company, an Ohio Corporation. This latest mortgage was assigned thereafter to Goldome, which provided the funds used to pay off the old mortgage to Goldome Credit. Further, the amount of the latest mortgage exceeded the amount of the 1983 mortgage by over $45,000. Therefore, Goldome's 1988 mortgage does not appear to be a renewal of Goldome Credit's 1983 mortgage. See Godwin, 145 So. at 884-85 (subsequent mortgage was renewal of original mortgage where the parties and the mortgage amounts were the same in both mortgages and where the mortgages were on the same lands).
In summary, there is no evidence that First Federal's second mortgage has been subordinated to Goldome's 1988 mortgage. Furthermore, with no indication within the instruments themselves that the latest mortgage was intended to be a renewal mortgage, with a different amount in the latest mortgage, and with a factual question as to whether these mortgages involved the same parties, the summary judgment cannot stand.
Reversed and remanded for proceedings consistent with this opinion.
HALL, A.C.J., and THREADGILL, J., concur.
NOTES
[1] Either fraudulently or mistakenly, Cardinal executed the satisfaction of the second mortgage which had been assigned two years earlier to First Federal.
[2] This fact comes from the affidavit of Kathryn M. Mulloy, Goldome's vice president of portfolio restructuring, who swears:

4. That as consideration for the assignment of the promissory note and mortgage, Goldome advanced funds in the amount of $1,500,000.00.
[3] This second mortgage was delivered from Lakewood to Cardinal and then assigned to First Federal.