Ann CARROLL, et al.,
Appellants/Respondents,

v.

OAK HALL ASSOCIATES,
L.P., et al., Defendant,

Justin Corporation and Stanley Bushman, Respondents/Appellants.

Nos. WD 48409, WD 48454.

Missouri Court of Appeals,
Western District.

March 7, 1995.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 2, 1995.

Application to Transfer Denied
June 20, 1995.

Michael F. Saunders, Kansas City, for appellants/respondents.

Leonard B. Rose, Kansas City, for respondents/appellants.

Before SMART, P.J., and KENNEDY and ULRICH, JJ.

KENNEDY, Judge.

This is a new opinion, after an earlier opinion. The court on its own motion ordered rehearing of this case, and ordered submission to the same panel of judges, without further briefing or argument.

This is an appeal from a judgment of the trial court in an action by the Board of Managers of the Oak Hall Condominium Association against Oak Hall Associates, L.P., and its general partner, Diversified Equity Investment, Inc., for unpaid common expense assessments on 47 condominium units owned by Oak Hall Associates, L.P. At the time of judgment, the assessments had gone unpaid since January 1, 1988, and the accumulated sum had reached $783,849.59. The trial court gave judgment against Oak Hall Associates, L.P., and its general partner, Diversified Equity Investment, Inc., for that amount, plus future assessments as they ac-

crued at the rate of $17,086.44 per month, together with interest on the whole, and attorneys fees. The judgment was held to be a lien against the 47 condominium units, and foreclosure was ordered.

The trial court held, however, that the lien for the delinquent assessments was subordinate to two deeds of trust—a first deed of trust for $2,600,000 held by defendant Justin Corporation, and to a second deed of trust for $1,100,000 held by defendant Stanley Bushman—except as to assessments accruing from January 1, 1988, to April 5, 1989. On the latter date, the Association had recorded a "notice of lien," claiming a lien on the 47 units for unpaid assessments. The amount accumulated to that time was $75,-931.07, to which amount the court added accumulated interest and attorneys fees. As to that amount, the court held, the common expenses lien was superior to the two deeds of trust.

Justin Corporation and Stanley Bushman appeal, arguing that the Franklin Savings/Justin Corporation deed of trust was superior to the common expenses lien, including the January 1, 1988—April 5, 1989 assessments.

The Board of Managers of the Association appeal, claiming the entire amount of its delinquent common expenses constitutes a lien, and that the lien is superior to the two deeds of trust.

We do not need to linger over Justin Corporation's first point, which is that the trial court erred in failing to dismiss the petition because it was not brought in the name of the real party in interest, to wit, the Board of Managers, but was brought instead by the unincorporated condominium Association. Upon Justin Corporation's motion to dismiss, the trial court—erroneously, Justin Corporation says—allowed the amendment of the petition to substitute the members of the Board of Managers as plaintiffs. "Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action...."

Mo.Sup.Ct.R. 52.06. An amendment to a pleading "is within the sound discretion of the trial judge and should be done liberally." *Union Center Redevelopment Corp. v. Leslie*, 733 S.W.2d 6, 8 (Mo.App.1987) (citing *Pender v. Foeste*, 329 S.W.2d 656 (Mo.1959)). The trial court did not err in denying Justin Corporation's motion to dismiss.[1]

Plaintiff Oak Hall (Condominium) Association has a multi-story building at 4550 Warwick Boulevard in Kansas City, with 160 residential units. Of those 160 units, defendant Oak Hall Associates, L.P., owns 47 units. The condominium Association dates from 1978. Defendant Stanley J. Bushman was one of three partners who developed the condominium. Defendant Oak Hall Associates, L.P., acquired title to its 47 units in 1984. The record does not expressly show who was the grantor in the 1984 conveyance to Oak Hall Associates, L.P., but it may be inferred that it was Bushman.

The maintenance of the building and common elements, taxes, insurance and other common expenses of the condominium Association are paid by the Board of Managers, from the proceeds of assessments by the Board of Managers against the units and their respective owners. The assessments are pro-rated on the basis of the square footage per residential unit. They are payable in monthly installments. The assessments as they become due (as we hereafter hold) constitute a lien on the respective units. Section 448.3–116.1, RSMo 1986.

Following is the history of the Justin Corporation deed of trust:

Oak Hall Associates, L.P., as noted above, became the record owner of 47 Oak Hall units in January, 1984. The record does not show from whom it acquired title; probably from Stanley Bushman, who appears to have had fee simple title to the units on May 6, 1982. On the latter date, Bushman executed a deed of trust to Franklin Savings Association, conveying the 47 Oak Hall units which are involved here, securing the payment of a

---

1. We do not mean to hold that the Association was not the real party in interest and the appropriate plaintiff. That issue is not presented. The parties assume the Association was not the real party in interest, as claimed by defendants, and they join issue on the propriety of the court's allowing the substitution of the Board of Managers as plaintiff by amendment.

promissory note for $2,592,000. The proceeds of the Franklin Savings loan, according to Bushman's testimony, were used by Bushman "to pay off a loan at Traders National Bank." The Traders National loan, Bushman testified, had been for the purchase of the units involved in this lawsuit. The record does not tell us the date of the Traders National loan, nor do we have any other information about it. On September 22, 1983, the Franklin Savings deed of trust was modified by increasing to $2,600,000 the amount of the indebtedness secured.

On December 11, 1989, Franklin Savings Association assigned the deed of trust to Justin Corporation, a corporation formed by Bushman. The assignment contained the name and address of "Rose, Jackson, Brouillette and Shapiro, 4400 Main 11th Floor KCMo 64112." This was printed by hand at the end of the typed prefatory paragraph of the assignment, following the name of "Justin Corporation." Bushman was at the time of the trial, and had always been, the sole shareholder of Justin Corporation. Rents on the condominium units were paid to Justin Corporation under an assignment of rents contained in the deed of trust.

### LIEN FOR COMMON EXPENSES

The Board of Managers on April 5, 1989, filed a "notice of lien," in which it asserted a lien against the 47 Oak Hall Associates, L.P., units for the common expenses assessments which had accrued at that time. The amount of delinquent assessments at that time amounted to $88,907.54. The notice also purported to assert a lien for future unpaid assessments. Justin Corporation argues that the notice of lien was ineffectual to capture future unpaid assessments, that it was effective only as to those that had already accrued. We are of the opinion, though, that it was not necessary for the Board of Managers to file a notice in order to have a lien for unpaid common expenses assessments; the recorded notice requirement went out with the Uniform Condominium Act, effective September 28, 1983 (hereinafter the "new law"). "1. The Association has a lien on a unit for any assessment levied against that unit or fines imposed against its unit owner

from the time the assessment or fine becomes due.... 4. Recording of the declaration constitutes record notice and perfection of the lien. No further recordation of any claim of lien for assessment under this section is required." Section 448.3–116. The assessments, the due dates, their delinquency, and all proceedings to enforce the lien, unmistakably come within the meaning of "events and circumstances occurring after September 28, 1983," and they are therefore governed by the new law. Section 448.1–102. With respect to the lien of the delinquent common expenses, section 448.3–116, of the new law supersedes section 448.080, RSMo 1986, of the Condominium Property Act (hereinafter the "old law").

■ What is the effect, though, of the provision in the by-laws of the Association, which rescripts the provisions of section 448.080 of the old law, and which—unlike the new law—requires the recorded notice of the common expenses lien? Section 448.1–102 says that the new law (including 448.3–116.4) applies "only with respect to events and circumstances occurring after September 28, 1983, *and do not invalidate existing provisions of the declaration, bylaws, or plats of those condominiums.*" (emphasis ours.) Justin Corporation points out that the Oak Hall bylaw, which rescripts section 448.080.2 (of the old law), requires the recording of a notice of its common expenses lien. The new law, it says, which dispenses with the recorded notice requirement, would invalidate the Oak Hall by-law which requires the recorded notice. Ergo, Justin Corporation says, the new law—even though it might supersede the old law—still does not invalidate the by-law which, tracking the old law, requires recorded notice. This would be a good argument, if the lien depended upon the by-law. As implicitly held by *Brask v. Bank of St. Louis,* 533 S.W.2d 223 (Mo.App.1975), however, the common expenses lien draws its efficacy, not from the by-law, but from the statute. The by-law could not add to or subtract from the statutory lien provision of section 448.080.2; its only use was to make the statutory provision more convenient and accessible. Therefore, the new law did not "invalidate" the by-law; the by-law was always impotent.

It follows that the new law, dispensing with the notice requirement, supersedes both the old law and the by-law which required the recorded notice.

This holding, we think, is in keeping with the philosophy of the condominium code, which places a high value on a uniform system of rules relating to condominiums, as opposed to myriad idiosyncratic variations which might be written into condominium association declarations and by-laws. See, Section 1–102, Uniform Condominium Act, Comment; William S. Ohlemeyer, The Uniform Condominium Act in Missouri, 49 Mo. L.Rev. 595 (1984). "Variations in the Act's requirements are generally allowed only where expressly provided." 49 Mo.L.Rev. at 597; Section 448.1–104.

The Association's lien, then, arose when the common expense assessments became due and were unpaid. The first of the delinquent assessments was due January 1, 1988, and each month's assessment since that date has remained unpaid and constitutes a lien on the respective units.

## PRIORITY OF DEED OF TRUST

We come now to the question of the claimed priority of the Franklin Savings/Justin Corporation deed of trust over the lien for the common expenses. The deed of trust was executed and recorded well before the Association's common expense assessments became a lien on the units included in the deed of trust.

The Association, pointing to section 448.080 of the old law, says the prior recorded deed of trust is not entitled to the priority accorded to it by that section, because it does not contain a Missouri mailing address for the encumbrancer, Franklin Savings Association.

Justin Corporation, on the other hand, claims section 448.080 does not apply, but the priority of its deed of trust is governed by 448.3–116.2(2) of the new law. This section does not require a Missouri mailing address of the encumbrancer to be stated in the encumbrance in order for the encumbrance to have priority. It gives priority to: "(2) A mortgage and deed of trust for the purchase of a unit recorded before the date on which the assessment sought to be enforced became delinquent." [2]

■■■ We think, however, the position of the deed of trust in its relation to the common expenses lien is governed by the old law—the law in effect when the deed of trust was executed—rather than the new law. Parties are deemed to enter into their contracts in contemplation of the law as it exists at the time, and it is sometimes said that the existing law is a part of the contract as if it were written therein. 16A C.J.S. *Constitutional Law* § 277 (1984). The deed of trust was not an "event" or "circumstance" occurring after September 28, 1983, so as to make it subject to the new law, section 448.1–102.1. Section 448.1–102.1, so interpreted, does not run afoul of the constitutional prohibition against a state law which impairs the obligation of contract. See, e.g., 16A C.J.S. *Constitutional Law* § 277 (1984); *Sarasota County v. Andrews,* 573 So.2d 113 (Fla.Dist. Ct.App.1991); *Federal Land Bank of Wichita v. Bott,* 240 Kan. 624, 732 P.2d 710, 714–717 (1987); *Rebholz v. Metrocare, Inc.,* 397 So.2d 677, 679 (Fla.1981). As a tenet of

2. In arguing that the new law applies to the deed of trust, Justin Corporation says its deed of trust is "a ... deed of trust for the purchase of a unit ..." within the meaning of section 448.3–116.2(2) of the new law. The Franklin Savings/Justin Corporation deed of trust is clearly not "a ... deed of trust for the purchase of a unit ..." within the meaning of section 448.3–116.2(2). Justin points out that the proceeds of the Franklin Savings/Justin Corporation deed of trust were used to pay off a purchase money deed of trust running to Traders National Bank. In some situations, a deed of trust may succeed by subrogation to the favored status of a deed of trust which it replaces. See, e.g., *Commerce Sav.*

*Lincoln, Inc. v. Robinson,* 213 Neb. 596, 331 N.W.2d 495 (1983); *Greenfield v. Petty,* 346 Mo. 1186, 145 S.W.2d 367 (Mo.1940); *Troyer v. Mundy,* 60 F.2d 818 (8th Cir.1932). This doctrine is applied in cases where the first lender and the second lender are the same person. *Kubany v. Woods,* 622 So.2d 22 (Fla.Dist.Ct.App.1993); *Resolution Trust Corp. v. Niagara Asset Corp.,* 598 So.2d 1074 (Fla.Dist.Ct.App.1992); 59 C.J.S. *Mortgages* § 168 (1949). Equitable subrogation is allowed where the lenders are different only in rare cases, to prevent fraud and injustice. *Landmark Bank v. Ciaravino,* 752 S.W.2d 923 (Mo. App.1988).

statutory construction, the court should avoid an interpretation of a statute which would make the statute unconstitutional, where it is open to another, equally plausible, interpretation by which it would be valid. *Blaske v. Smith & Entzeroth, Inc.*, 821 S.W.2d 822, 838–39 (Mo. banc 1991).

■ If the old law applies to the Franklin Savings/Justin Corporation deed of trust (as we have held it does), is it entitled to priority over the Association's common expenses lien? The deed of trust contained no Missouri mailing address of the encumbrancer. During the time the deed of trust contained no Missouri mailing address for the encumbrancer, Justin Corporation does not dispute that the deed of trust was inferior to the common expenses lien. Section 448.080.2, RSMo; *see Brask v. Bank of St. Louis, supra*, 533 S.W.2d at 226. It argues, though, that the absence of a Missouri mailing address was supplied on December 11, 1989, at the earliest, or, in any case, on July 27, 1990. On December 11, 1989, there was executed and recorded an assignment of the deed of trust from Franklin Savings to Justin Corporation, described earlier. On July 27, 1990, there was recorded an amendment of the deed of trust, dated and recorded July 27, 1990, which purported to amend the deed of trust to show a Missouri address for Justin Corporation. After one of those dates—December 11, 1989, at the earliest, or July 27, 1990, at the latest—the deed of trust, Justin Corporation says, gained priority over later assessments as they accrued.

Neither the assignment nor amendment brings the deed of trust within the narrow definition of an encumbrance which "contains a statement of a mailing address in the state of Missouri where notice may be mailed to the encumbrancer thereunder." Section 448.080.2. A title search would have disclosed the amendment and the assignment, but it was not the condominium association's burden to search the records forward from the 1982 deed of trust in order to overtake the current holder of the encumbrance, and its Missouri address, if any. Had the deed of trust originally contained a Missouri mailing address for the encumbrancer, then its priority might have been maintained by a change

of Missouri mailing address by amendment, or by assignment, but that is not the case here. Here it is attempted for the first time, either by the assignment or by the amendment, to qualify the deed of trust for priority.

■ The statutory provision for the Missouri mailing address requirement calls for a strict and literal construction. The statute establishes a lien priority system by which the general and favored rule is that the common expenses lien has priority over other liens. This is true under the old law (section 448.080.1) and also under the new law (section 448.3–116.2). Subordination of the common expenses lien to other liens is the exception. Exceptions, as a principle of statutory interpretation, are to be strictly construed, and are not to be enlarged by intendment. Sutherland Stat. Const. § 47.11 (5th Ed.). The language of the statute itself runs counter to any notion of a liberal interpretation. It does not say the deed of trust has priority "if" it contains the Missouri mailing address; it says the deed of trust has priority "but only if" it contains the Missouri mailing address. The choice of language seems internally to raise an admonishing finger against any tendency toward a liberal interpretation. We are unable to say, then, that the inclusion of a Missouri mailing address in an assignment of an encumbrance, executed and filed seven years after the encumbrance, and an amendment filed yet later, meets a statutory requirement that a Missouri mailing address be contained in the encumbrance itself.

■ Bushman's second deed of trust was dated November 1, 1983, and was therefore governed by the new law. It was admittedly not a purchase money deed of trust, and therefore has no claim to priority over the common expenses lien. Bushman would, of course, argue that the Association had no lien for assessments which came due after its notice filed April 5, 1989, but we have considered and rejected that position supra.

We hold therefore that the common expenses lien on the condominium units in question includes all the delinquent assessments for common expenses, as well as interest and plaintiffs' attorneys fees; and that the lien has priority over both the Franklin

Savings/Justin Corporation and the Bushman deeds of trust. The judgment of the trial court is reversed, and the case is remanded for the entry of a new judgment in accordance with the foregoing opinion. The trial court may hear such additional evidence as may show changes in amounts since the trial of the case.

All concur.