STATE of Missouri, ex rel. Chris KOSTER, Appellant,

v.

Brent M. QUICK, Respondent.

No. WD 71459.

Missouri Court of Appeals, Western District.

Dec. 14, 2010.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 1, 2011.

Application for Transfer Denied March 29, 2011.

Laura E. Elsbury, Jefferson City, MO, for appellant.

Gary L. Stamper, Columbia, MO, for respondent.

Before Division Three: JAMES M. SMART, JR., P.J., JOSEPH M. ELLIS, and GARY D. WITT, JJ.

GARY D. WITT, Judge.

The State appeals the judgment denying recovery under the Missouri Incarceration Reimbursement Act. It argues on appeal that relief is not precluded by the MIRA homestead exemption. The judgment is affirmed.

### Facts

The State of Missouri filed a petition pursuant to the Missouri Incarceration Reimbursement Act ("MIRA").[1] The facts of this case are basically undisputed. Brent Quick is a prisoner committed to the custody of the Missouri Department of Corrections, and recovery of all or a portion of the cost of care incurred was sought by the State for Quick's incarceration. The petition alleged Quick had the following assets:

1. Real estate in Boone County valued at $87,600 as shown by [county records].

2. Money from his mother, totaling $275 in the last two months.

The State acknowledged that the residence was Quick's "homestead" within the meaning of MIRA. Pursuant to the procedure established in sections 217.835 through

217.837, the court issued an order to show cause and an *ex parte* order appointing a receiver. Quick wrote a letter to the court stating:

> I have absolutely no income, job, car, checking account or any money coming to me to reimburse you for my incarceration. There are no parties, persons, relatives, significant other, or acquaintances that have access to any assets of myself Brent Quick. Because I have no assets or income coming in. Boone County valued my homestead in the amount of $87,600.00. I, Brent Quick, still owe $84,000.00 on this property. I don't see any way I can meet your request to pay any money.

He requested that the State cease pursuing reimbursement.

The court entered judgment in favor of Quick. It found that the net value of Quick's homestead real estate was less than the $50,000 homestead exemption and, accordingly, that the State failed to prove there are assets subject to MIRA. The State appeals.

### Standard of Review

"Our review of the trial court's judgment is governed by the standard of review established in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)." *State ex rel. Nixon v. Griffin*, 291 S.W.3d 817, 819 (Mo.App.2009) (internal quotations marks omitted). "Accordingly, [w]e must affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Id.* (internal quotation marks omitted). "We review questions of law *de novo*." *Id.*

---

1. The Missouri Incarceration Reimbursement Act (MIRA) is found in sections 217.825 through 217.841 RSMo 2000.

## Analysis

For ease of analysis, we will address the State's two Points on Appeal in reverse order. In Point Two, the State argues the trial court erred in entering judgment for Quick because Quick failed to rebut the State's *prima facie* case in that the State presented evidence showing Quick was incarcerated in a Missouri correctional facility and that he had assets subject to MIRA because he owned a home worth at least $87,600 and Quick presented no evidence.

■ The State argues it made a prima facie case for judgment in its suit against Quick pursuant to MIRA which only requires the State to show that (1) the offender is incarcerated in a state correctional facility, and (2) he has assets that could be used for reimbursement. Section 217.835.1. The State then argues that Quick failed to present *any* evidence to respond to the State's case and that, therefore, there was no evidence to support the trial court's judgment.

■ After the State made its prima facie case, the trial court in accordance with MIRA Section 217.835.2, issued an Order to Show Cause when the State filed its Petition which instructed Quick to:

> Respond to the petition in writing showing cause why an order should not be entered ordering Brent Quick to reimburse the State for the costs of Brent Quick's confinement in a state correctional facility.

In response, Quick sent a letter to the trial court alleging he had no assets, which was filed by the circuit clerk with the court. MIRA does not explicitly set out what a response to a show cause order must entail. *See* section 217.835. The State argues that "the mere filing of a document does not put it before the court as evidence." *Halupa v. Halupa,* 943 S.W.2d 272, 276 (Mo.App. E.D.1997). We reject the State's position that Quick's response was inadequate. MIRA does not require the response to a show cause order to be in any specific form, and we will not read such into the statute. However, we need not address whether the inmate's response should have been admitted into evidence because the State did not object to the trial court's use of Quick's response as evidence at the hearing, just as Quick did not object to the State's use of the county assessor's value to establish the value of the property. "Counsel's failure to object to the admission of the evidence at the earliest opportunity constitutes a waiver of the claim." *State v. Phillips,* 319 S.W.3d 471, 476 (Mo.App. S.D.2010).

Point Two is denied.

■ In Point One, the State argues the trial court erred in entering its judgment in favor of Quick because the State presented evidence that Quick has assets subject to judgment under MIRA because the State established that the market value of Quick's home exceeded $50,000 and the trial court incorrectly interpreted "value" as used in the homestead exemption (section 217.827(1)(b)a) to mean the owner's net equity rather than market value.[2] The issue before this court is how the trial court, under MIRA, must regard the value of a homestead.[3] The trial court determined that a homestead's value is its net equity. It denied a recovery under MIRA

---

2. The exemptions contained in MIRA itself apply here, to the exclusion of the general exemptions to a judgment creditor's claims stated in Chapter 513. *See State ex rel. Nixon v. Overmyer,* 189 S.W.3d 711, 717–18 (Mo. App. W.D.2006).

3. This same issue is raised in *State ex rel. Koster v. Huddleston* (WD71458), which is also before this court.

because the court concluded that the net value of Quick's homestead, determined by subtracting the balance of his mortgage from the home's value, was less than the $50,000 homestead exemption. The State argues that the value of a homestead is its market value without a deduction for any indebtedness secured by the property. The State argues that judgment should have been in its favor because the value of Quick's homestead exceeded the $50,000 exemption by an amount sufficient to allow recovery.

█ █ Considering the statutory framework of MIRA, and the manner in which this case has been argued by the State, we are convinced the trial court was correct in construing the homestead's "value" under section 217.827(1)(b)a to be its net equity. To establish a prima facie case under MIRA, the State must "show that (1) the offender is incarcerated in a state correctional facility, and (2) *he has assets that could be used for reimbursement." State ex rel. Nixon v. Hughes*, 281 S.W.3d 902, 907 (Mo.App. W.D.2009) (emphasis added); Section 217.835.1. Section 217.831.3 dictates that the attorney general must have good cause to believe that the offender's assets reach a certain threshold amount before he is authorized to seek reimbursement for the cost of the offender's care. The purpose of this requirement is "intended as a cost-effective limitation on the attorney general's authority. The attorney general can only seek reimbursement if there is an expectation of reasonable return." *State ex rel. Nixon v. Peterson*, 253 S.W.3d 77, 83 (Mo. banc 2008) (citations omitted).

However, ensuring a reasonable expectation of return under this framework is somewhat problematic in that MIRA does not allow the State to execute a MIRA judgment against a homestead by foreclosure, regardless of the value of the property comprising the homestead. "The attorney general or a prosecuting attorney shall not enforce any judgment obtained . . . by means of execution against the homestead of the prisoner." Section 217.837.3. In cases in which the State obtains a MIRA judgment against an offender who has a homestead, the State may not take any action to collect on the homestead asset until the property is conveyed. The State applies the homestead exemption at the time of conveyance, which presumably could occur any time during the life of the MIRA judgment. The State can claim a lien on the net sales proceeds but cannot claim an amount that would leave the defendant or his family with less than $50,000 in the net sales proceeds.

To protect the State's expectation of a reasonable return, MIRA grants priority to its lien against the assets of an offender against subsequent creditors. "The state's right to recover the cost of incarceration . . . shall have priority over all other liens, debts, or other incumbrances against real property or any other assets which are part of a prisoner's estate." Section 217.837.4. A literal reading of this section suggests that the State's judgment lien against the offender's property would take priority over *all* other liens, including liens created prior in time to the judgment lien. This "super-priority" interpretation, however, was rejected by the State at oral argument due to the State's belief that such an interpretation would be contrary to constitutional principles. Accordingly, the State said it has not and will not attempt to use this section in such a manner as to do so would be a constitutional violation of the rights of the prior secured creditors.

We acknowledge that the State has legitimate concerns over the application of this broad provision apparently granting the State super-priority over prior liens.

"Article I, section 13 of the Missouri Constitution provides that no ... law impairing the obligations of contracts ... shall be enacted." *Gershman Inv. Corp. v. Duckett Creek Sewer Dist.*, 851 S.W.2d 765, 767 (Mo.App. E.D.1993). Missouri courts have been clear that granting a lien priority over prior liens is an interference with a vested right and as such is a concern under the Contract Clause. *See id.* ("Whether a statute creates the power to file superior liens or changes the priority of liens under an existing statute, the vested rights of pre-enactment liens will be impaired."); *Lohr v. Cobur Corp.*, 654 S.W.2d 883, 885 (Mo. banc 1983) (quoting *Sec.–First Nat'l Bank of L.A. v. Rindge Land & Navigation Co.*, 85 F.2d 557, 561 (9th Cir.1936) (" 'The right to retain a lien until the debt secured thereby is paid is a substantive property right which may not be taken from the creditor consistently with the Fifth and Fourteenth Amendments to the Constitution. *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 594, 55 S.Ct. 854[865], 79 L.Ed. 1593, 97 A.L.R. 1106' ")).

There are also a series of cases from other jurisdictions that have found statutes or ordinances attempting to create liens with a higher priority than prior liens unconstitutional under Article I, Section 10 of the United States Constitution. For example, in *Sarasota County v. Andrews*, 573 So.2d 113, 115 (Fla.Dist.Ct.App.1991), the district court found that:

> [t]he United States and Florida constitutions prohibit laws impairing the obligation of contracts. U.S. Const. art. I, § 10; Art. I, § 10, Fla. Const. A statute offends this prohibition when it "has

the effect of rewriting antecedent contracts, that is, of changing the substantive rights of the parties to existing contracts." *Manning v. Travelers Ins. Co.*, 250 So.2d 872, 874 (Fla.1971).

We think the priority provision of the County's ordinance substantially impairs Coast Federal's prior mortgage lien by subordinating it to the County's lien. If by operation of the County's ordinance, Coast Federal's lien can be relegated to a secondary position, it is obviously of less value than the first-priority lien for which Coast Federal had contracted. Thus, the ordinance retrospectively impairs Coast Federal's contractual position.

Although certain super-priority liens do exist, such as tax liens, those liens are only effective against holders of the prior lien who entered into the lien agreement after the statute creating the superior priority lien went into effect (the holders of the prior liens had notice that the tax lien may take priority even over liens prior in time).[4] *See* 72 AM.JUR. 2d *State and Local Taxation* § 806 (2001); *St. Louis Inv. Props., Inc. v. Metro. St. Louis Sewer Dist.*, 873 S.W.2d 303, 306 (Mo.App. E.D. 1994).

Application of Section 217.837.4 as a lien granting the State super-priority over liens prior in time to the MIRA judgment, as acknowledged by the Attorney General, poses serious constitutional questions. Although we do not decide these constitutional questions, for purposes of deciding the issues presented we accept the Attorney General's concession that application

---

4. It should also be noted property taxes are a set amount, known in advance, and there are easy ways for a prior creditor to protect its interests by requiring an appropriate escrow to cover the taxes owed each year. Even if the first lien is created after the effective date of the MIRA statute, there is no way for a creditor to protect itself from the possibility of the future incarceration and potential MIRA lien of a person taking out a mortgage on a home.

of the statute in such a way would be unconstitutional.

■ The homestead exemption excludes the State from obtaining a judgment against the offender for "[t]he homestead of the offender up to fifty thousand dollars in value." Section 217.827(1)(b)a. Given the State's concession that the super-priority lien provision is unenforceable, the State's interpretation of the homestead exemption as meaning fifty thousand dollars of market value does not accord with the intent behind MIRA. A statutory *exemption* from a creditor's claim must be interpreted in light of the priority which attaches to the claim itself. Here, the purpose of MIRA's homestead exemption is plainly to shield certain property— *which would otherwise be available to satisfy a MIRA judgment*—from being used for that purpose. The *exemption* is only necessary if property would be subject to authorized collection efforts absent the exemption. Yet the State's current legal position seeks to de-couple the point at which the exemption attaches from the priority afforded the State's MIRA claim. Under the State's argument, the homestead exemption is rendered meaningless in any case where a homestead is subject to $50,000 or more in pre-existing encumbrances. In such a case, the State asks us to interpret the homestead exemption to "exempt" $50,000 in the homestead's market value from collection by the State when (under the State's position as to the invalidity of the super-priority lien) that $50,000 was never subject to the State's MIRA claim in the first place because it is subject to a senior lien.

The good cause determination that a certain threshold amount be verified before suit is filed and the exemption for the homestead up to fifty thousand dollars in value both support Quick's interpretation of "fifty thousand dollars in value" meaning fifty thousand dollars in net equity.

An example will prove helpful. Offender A has a homestead with a market value of $60,000 and no encumbrances. Offender A's homestead then has a net equity of $60,000. Offender B has a homestead with a market value of $100,000 but it has prior liens that encumber the property of $120,000. Offender B has no equity and actually negative equity. MIRA does not allow the state to foreclose on the property, so the state must wait until a conveyance occurs (either a sale of the property by the owner or an execution against the property by another lien creditor). The state's interpretation of the statute would allow it to claim the $10,000 of equity beyond the $50,000 homestead exemption after the sale of Offender A's property. The likelihood of the state eventually recovering against Offender A, who has net equity, is much higher than against Offender B, even though the market value of Offender B's property is much greater than Offender A's property. The likelihood of recovery against Offender B is quite low due to the State's acknowledgement that prior creditors would have liens superior to the MIRA judgment and over and beyond the actual market value of the property.

Interpreting the homestead exemption to apply to homesteads up to fifty thousand dollars in *market* value is arbitrary, against logic, and contrary to the underlying purpose of MIRA, which mandates that the state is only to initiate suit against an offender where the state is likely to recover a certain threshold amount before undergoing the time and expense of litigation. Given the State's position concerning the validity of MIRA's super-priority lien provision, market value of the homestead, considered separately from prior encumbrances on the property, has no real bearing on whether the State could recover "assets that could be used for reimbursement." *State ex rel. Nixon v. Hughes*, 281 S.W.3d 902, 907 (Mo.App. W.D.2009); Sec-

tion 217.835.1. Reason dictates that "up to fifty thousand dollars in value" means up to fifty thousand dollars net equity.

The State's argument that the first $50,000 refers to market value because the State believes that an offender who has a home valued above that amount should be required to reimburse the State does not make sense. Any suggestion that this provision is some sort of penalty for owning a home with a market value over $50,000 is refuted by the statute itself, which explicitly requires some *threshold amount of recovery* before a MIRA judgment can be pursued. The state's ability to determine whether prior liens exist that take priority over a potential MIRA judgment is absolutely necessary to achieve the purpose of MIRA to restrict the state using its limited resources to pursue actions only against those offenders with sufficient assets to pay a statutorily set minimum amount.

The State argues that the statutory framework does not contemplate that the Department would know the balance of prior liens on the homestead, and therefore, the legislature could not have intended "value" in the homestead exception to mean net equity. Section 217.829.1 requires the Department to "develop a form which shall be used by the department to *obtain information from all offenders regarding their assets.*" This form may be resubmitted to the offender regularly to obtain current information on the offender's assets. *See* Section 217.829.2. Further, Section 217.829.3 provides that "[e]very offender shall complete the form or provide for completion of the form and the offender shall swear or affirm under oath that to the best of his or her knowledge the information provided is complete and accurate." Knowingly providing false information on this form is the crime of submitting a false affidavit; and the offender's failure to fully, adequately, and correctly complete the form may be considered by the parole board if the offender is eligible for parole. Sections 217.829.3 & 217.829.4. Just because the Department has failed to create a form that requires the offender to provide information on prior liens of his homestead does not mean the legislature did not intend for the state to consider this information prior to making a good cause determination. It is just as likely the Department misinterpreted or overlooked this factor in creating the form. The offender is in the best position to know his assets and provide information on his indebtedness on a property. The tools necessary for the state to gain access to this information (from the offender) have been provided by statute. The fact that the state has not developed statutorily authorized processes by which to gain access to this information tells us nothing about the legislature's intent behind its use of the term "value" in the homestead exception.

MIRA does specifically instruct the trial court, before entering an order against the offender, to "take into consideration any legal obligation of the defendant to support a spouse, minor children, or other dependents and any moral obligation to support dependents to whom the defendant is providing or has in fact provided support." Section 217.835.4. The State argues that this provides a vehicle for the trial court to consider indebtedness of property in relation to dependents occupying said property. The State also argues that the specific inclusion of this consideration of debt means the legislature did not intend that the attorney general was to consider debt on the homestead in making his good cause determination. As is apparent, this section only specifically instructs the trial court to consider obligations to family or dependents before entering judgment. First, it is clear the legislature wanted the trial court to be mindful of the impact a judgment against the offender could have on his family. This does not mean that all

other debt obligations should be disregarded in determining whether the offender has assets subject to seizure in the first instance. Second, this section only pertains to the trial court *after* the good cause determination has been made. The question we are considering is whether there are assets to be seized at all in connection with a homestead before a good cause determination can be made. A reading of Section 217.835.4 to mean that the legislature did not intend prior liens on homesteads to be considered by the state before a good cause determination could be made because the trial court should consider familial obligations before entering its judgment is unpersuasive.

Point One is denied.

### Conclusion

The judgment of the trial court denying the State recovery under the Missouri Incarceration Reimbursement Act is affirmed.

All concur.