WILLIAM W. FRANCIS, JR., J.
Arvest Central Mortgage Company ("Arvest") appeals from summary judgment granted in favor of Four Seasons Racquet and Country Club Property Owners Association, Inc. ("Four Seasons"). In two points, Arvest contends the trial court erred in granting summary judgment in favor of Four Seasons because Four Seasons' "Declaration" specifically adopts Missouri's Uniform Condominium Act ("the UCA"), as amended; and because the 2014 amendment to the UCA should have applied retroactively, in that the amendment was remedial rather than substantive. Finding no merit in Arvest's points, we affirm the trial court's judgment.
Factual and Procedural Procedure
On July 6, 2000, Carol Butler ("Butler") purchased a condominium unit located in the Four Seasons Racquet and Country Club condominiums by warranty deed from Kathleen Ray.
On February 28, 2005, Four Seasons recorded its "Second Amendment and Complete Restatement of Declaration of Condominium" ("the Declaration").[2]
On February 12, 2009, Butler executed a promissory note and deed of trust in favor of Bank Star One. The deed of trust was recorded on February 18, 2009. On February 13, 2009, Bank Star One assigned the note and deed of trust to Arvest by deed of trust, recorded on February 20, 2009. On October 23, 2013, "Millsap & Singer, P.C.," ("Millsap") was appointed successor trustee under the deed of trust.
On January 1, 2013, Butler failed to pay Four Seasons certain assessments that were otherwise due and owing, and failed to remit payment thereafter as other assessments became due.
On October 5, 2015, Four Seasons recorded a "Notice of Delinquent Assessments and Lien" against Butler and the Property, due to Butler's failure to pay assessments for the Property due and owing on January 1, 2013, and which continued to accrue thereafter.
*125 On December 15, 2015, Four Seasons filed a Petition to establish and foreclose its assessment lien against Butler. In a subsequent First Amended Petition, Four Seasons added Millsap as a party defendant.
On December 29, 2015, Millsap, in its capacity as successor trustee of the deed of trust, filed a "Notice of Trustee's Sale" on behalf of Arvest and caused it to be delivered to Four Seasons.
On March 24, 2016, Four Seasons filed a Second Amended Petition adding Arvest as a defendant, and requesting the court find Four Seasons' lien as priority against the Property, superior to the interest of Arvest. Four Seasons asserted it was a condominium association organized under the UCA,[3] and the Property and Butler were subject to the terms and conditions of the Declaration recorded in the Camden County Recorder of Deeds.
On September 27, 2016, Arvest filed a motion for summary judgment. On October 3, 2016, Four Seasons filed its motion for summary judgment. Both parties filed responses and replies to these respective motions.
On October 4, 2016, Four Seasons filed a "Motion for Order of Interlocutory Default" against Butler, which the trial court granted on October 12, 2016.
On January 5, 2017, a hearing was held on the parties' respective motions for summary judgment. The trial court took the matter under advisement.
On May 4, 2017, the trial court granted summary judgment in favor of Four Seasons, finding that Four Seasons' lien for unpaid assessments and fines arose January 1, 2013,[4] and its lien was "first, prior and paramount" to Arvest's mortgage lien. The trial court reasoned that in January 2013, the controlling version of section 448.3-116.2 gave Four Seasons a " 'super priority' lien which is superior to ALL other liens" except, as relevant here: (1) if Arvest's interest were recorded before the Declaration; (2) were for purchase of the unit; (3) were a governmental tax lien; or (4) dealt with certain specific conditions arising out of unit refinancing. The trial court found there was no genuine issue of material fact as to these issues, and none of those exceptions applied. The trial court noted that in 2014, there was an amendment to section 448.116.2 that removed Four Seasons' "super priority" status, but determined that such amendment should not be applied because it effected a "change[ ] [to] the substantive law of priority[,]" and if applied, "would take away from [Four Seasons] a vested right to priority over [Arvest's] lien." The trial court further found that the Declaration-purporting to adopt the UCA "as amended"-had no efficacy as to which version of the UCA applied.[5]
On June 22, 2017, Four Seasons filed a "Motion for Default Judgment Against Defendant Carol [Butler]," requesting the trial court enter a default judgment against Butler for the amount of the delinquent assessments, and to order foreclosure of Four Seasons' assessment lien.
On July 6, 2017, the trial court entered a *126 final judgment against Butler[6] and "for foreclosure of [Four Season]'s lien for delinquent assessments[.]" The trial court found that pursuant to "Four Seasons' declaration and the laws of the State of Missouri," Four Seasons was entitled to judgment against Butler in the amount of $66,553.11 for unpaid and delinquent condominium assessments, with nine percent interest, attorney fees as assessed, and costs. Four Seasons was also entitled to all assessments and fees levied or charged against the Property after the date of the judgment until the sale of the Property.
The trial court further indicated as follows:
IT IS FURTHER ORDERED ADJUDGED AND DECREED that the Judgment and lien of Plaintiff against the property described is declared to be a first, superior and paramount lien on and against the property described above as senior and superior to all rights, titles, liens or claims of any and all Defendants hereto.
IT IS FURTHER ORDERED ADJUDGED AND DECREED that Plaintiff is entitled to foreclosure of its lien and immediate sale of such real estate; that a special fieri facias execution shall issue for the sale of the premises described herein; that Plaintiff shall have the right to credit bid all or any part of its Judgment herein for such sale; and the proceeds of such sale be applied to payment of the Judgment herein.
IT IS FURTHER ORDERED ADJUDGED AND DECREED that the Defendants and all persons claiming under them are hereby forever barred and foreclosed from any equity of redemption.
IT IS FURTHER ORDERED ADJUDGED AND DECREED that the Court expressly retains jurisdiction of the property and subject matter herein pending sale of the real estate.
This appeal followed.
In two points on appeal, Arvest asserts the trial court erred in granting summary judgment in favor of Four Seasons because Four Seasons' Declaration specifically adopted the UCA "as amended and supplemented from time to time"; and erred in granting summary judgment in favor of Four Seasons because the amended version of the UCA was remedial rather than substantive, and should have applied retroactively.
Standard of Review
"Appellate review of summary judgment is de novo ." Doe Run Resources Corporation v. American Guarantee & Liability Insurance , 531 S.W.3d 508, 511 (Mo. banc 2017). "Summary judgment is appropriate when there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law." Id. In the present matter, the summary judgment record demonstrates no genuine dispute of material fact; therefore, the sole question is whether Four Seasons was entitled to judgment as a matter of law.
Analysis
Four Seasons accurately observes that the "fighting issue in this [appeal] is whether retrospective application is to be given to an amendment to § 448.3-116.2 [7 ] *127 of the [UCA,] which governs priority of the condominium association's lien for unpaid assessments."
Arvest's first argument as to this "fighting issue" is that the Declaration stated that the Four Seasons' properties were subject to "Chapter 488, Revised Statutes of Missouri (1983, as amended and supplemented from time to time), or any successor legislation to these statutes, commonly known as the Missouri Uniform Condominium Act[,]" and that application of the 2014 amendment to section 488.3-116.2 was therefore mandated.
Condominium liens are creatures of statute-namely, Missouri's UCA.[8] "The existence of a valid statutory lien rests entirely on whether the terms of the statute creating *128 the lien have been met."[9] Absent express authorization in the UCA, no provision therein "may be varied by agreement, and no rights conferred ... may be waived." § 448.1-104. Declarations and bylaws cannot "add or subtract from the ... lien provision[s]" of the UCA.[10] Such agreements can serve to make the authorizing "statutory provision more convenient and accessible," but agreement provisions that vary, waive, or add to the lien provisions of the UCA are "impotent" from inception.[11] To the extent the terms of condominium bylaws and declarations are both statutorily authorized, the declaration controls if the two conflict. § 448.2-103.[12]
Arvest suggests that the Declaration, which adopts the UCA "as amended and supplemented from time to time[,]" compels application of the 2014 amendment to section 448.3-116.2, even if application of that amendment would not otherwise follow. This argument trips over its own induction. If the Declaration would cause the law to be applied differently than the controlling provisions of the UCA (as this argument presupposes), the Declaration would be "impotent" as to that distinction. Carroll v. Oak Hall Associates, L.P. , 898 S.W.2d 603, 606 (Mo.App. W.D. 1995). Absent express UCA authorization, no UCA provision "may be varied by agreement, and no rights conferred ... may be waived." § 448.1-104. Arvest does not direct us to any provision in the UCA expressly conferring authority for a condominium declaration to pick which, when, or how UCA provisions apply. We need not attribute such omission to a lack of diligence by Arvest, as no such UCA provision exists. Rather, as applicable here, the UCA applies to "all condominiums created within this state after September 28, 1983." § 448.1-102. The Declaration could no more direct that new (and otherwise inapplicable) provisions of the UCA should apply, than it could direct that repealed (and otherwise inapplicable) provisions should apply. Arvest's reliance on the provisions of the Declaration as to which version of section 448.3-116.2 should apply is wholly unavailing.
Arvest's second argument suggests that to the extent application of the 2014 amendment to section 448.3-116.2 is not compelled by contract (the Declaration), the trial court should have applied the amendment retroactively because it was "purely remedial-rather than [a] substantive change in the law[.]" Arvest further argues that Four Seasons "has not lost any rights and has been given no additional duties which would be indicative of a substantive amendment. The 2014 *129 Amendment simply substitutes a new and more appropriate remedy for [Four Seasons] in enforcing its lien."
The Missouri Constitution prohibits laws that are retrospective in operation . Mo. Const. art. I, sec. 13.[13 ] A law is retrospective in operation if it takes away or impairs vested or substantial rights acquired under existing laws or imposes new obligations, duties, or disabilities with respect to past transactions.
Procedural and remedial statutes not affecting substantive rights, may be applied retrospectively, without violating the constitutional ban on retrospective laws. Procedural law prescribes a method of enforcing rights or obtaining redress for their invasion; substantive law creates, defines and regulates rights. The distinction is that substantive law relates to the rights and duties giving rise to the cause of action, while procedural law is the machinery used for carrying on the suit.
Hess v. Chase Manhattan Bank , USA, N.A. , 220 S.W.3d 758, 769 (Mo. banc 2007) (internal quotations and citations omitted) (emphasis in original). This test is disjunctive-a statute is retrospective in operation if either: (1) a vested or substantial right, acquired under existing laws, which the new statute impairs or takes away, or (2) the new statute imposes new obligations, duties or disabilities as to past transactions. See State v. Young , 362 S.W.3d 386, 390 (Mo. banc 2012).
The Western District of this Court recently discussed the constitutional effect of statutory changes to liens and lien priority:
Missouri courts have been clear that granting a lien priority over prior liens is an interference with a vested right and as such is a concern under the Contract Clause. [ Gershman Inv. Corp. v. Duckett Creek Sewer Dist. , 851 S.W.2d 765, 767 (Mo.App. E.D. 1993).] ("Whether a statute creates the power to file superior liens or changes the priority of liens under an existing statute, the vested rights of pre-enactment liens will be impaired."); Lohr v. Cobur Corp. , 654 S.W.2d 883, 885 (Mo. banc 1983) (quoting Sec. First Nat'l Bank of L.A. v. Rindge Land & Navigation Co., 85 F.2d 557, 561 (9th Cir. 1936) ) (" 'The right to retain a lien until the debt secured thereby is paid is a substantive property right which may not be taken from the creditor consistently with the Fifth and Fourteenth Amendments to the Constitution. Louisville Joint Stock Land Bank v. Radford , 295 U.S. 555, 594, 55 S.Ct. 854 [865], 79 L.Ed. 1593, 97 A.L.R. 1106 [ (1935) ]' ").
....
Although certain super-priority liens do exist, such as tax liens, those liens are only effective against holders of the prior lien who entered into the lien agreement after the statute creating the superior priority lien went into effect (the holders of the prior liens had notice that the tax lien may take priority even over liens prior in time). See 72 AM.JUR. 2d State and Local Taxation § 806 (2001) ;
*130 St. Louis Inv. Props. , Inc. v. Metro. St. Louis Sewer Dist., 873 S.W.2d 303, 306 (Mo.App. E.D. 1994).
Application of Section 217.837.4 as a lien granting the State super-priority over liens prior in time to the MIRA judgment, as acknowledged by the Attorney General, poses serious constitutional questions.
State ex rel. Koster v. Quick , 332 S.W.3d 199, 204-05 (Mo.App. W.D. 2010) (internal footnote omitted). The court agreed with the attorney general's concession that the application of a statute in such a way would be contrary to the Missouri Constitution.[14] Id. at 205.
We see no reason to depart from the precedent and reasoning in Quick , as applicable to article I, section 13 of the Missouri Constitution. See Young , 362 S.W.3d at 390. Arvest suggests that the 2014 amendment did not actually affect the order of lien priority here, and simply has the effect that "the amount that [Four Seasons] can recover under its lien has now been reduced." The essence of a lien is the security of a certain amount of debt. No flourish of analytical gymnastics is required in reaching the commonsense observation that a reduction in the amount of debt secured by first lien priority, under the facts of this case, is plain reduction in the lien's value .[15] Under the facts here, such an application would result in a disability as to Four Season's lien, rendering such application unconstitutionally retrospective. Young , 362 S.W.3d at 390 ; MO CONST. art. I, § 13.
The trial court found that Four Seasons' lien was entitled to priority because the pre-2014 amendment version of section 488.3-116.2 (giving Four Seasons' lien "super priority") controlled, in that: the amended version of section 488.3-116.2, if applied, would have an unconstitutional retrospective effect; and Four Seasons' Declaration, purporting to adopt the UCA "as amended," had no efficacy as to which version of the UCA applied. Arvest fails to persuade us that a different outcome is required based on the summary judgment record before us.
The trial court did not err in granting summary judgment without applying the 2014 amendment to section 448.3-116.2. Arvest's Points I and II are denied. The judgment of the trial court is affirmed.
NANCY STEFFEN RAHMEYER, C.J./P.J.-Concurs
JEFFREY W. BATES, J.-Concurs

Relevant to this opinion, the Declaration included the following section:
ARTICLE III
DEFINED TERMS
3.1 "Act " means Chapter 448, Revised Statutes of Missouri (1983, as amended and supplemented from time to time), or any successor legislation to these statutes, commonly known as the Missouri Uniform Condominium Act.

See §§ 448.1-101 to 488.4-120. All references to statutes are to RSMo 2000, unless otherwise indicated.

The trial court noted that "Missouri courts have uniformly held the Association's lien arises when an assessment is due and goes unpaid [,]" reflecting the January 1, 2013 date cited by the trial court (whereupon Butler failed to remit payment for assessments to Four Seasons).

The trial court denied Arvest's motion for summary judgment.

Butler has not appealed the trial court's Order of Interlocutory Default or the trial court's July 6, 2017 judgment entered against her.

As relevant to this opinion, the prior version of 488.3-116 (1999) (applied by the trial court), stated:
1. The association has a lien on a unit for any assessment levied against that unit or fines imposed against its unit owner from the time the assessment or fine becomes due. The association's lien may be foreclosed in like manner as a mortgage on real estate or a power of sale pursuant to chapter 443, RSMo. Unless the declaration otherwise provides, fees, charges, late charges, fines, and interest charged pursuant to subdivisions (10), (11), and (12) of subsection 1 of section 448.3-102 are enforceable as assessments pursuant to this section. If an assessment is payable in installments, the full amount of the assessment is a lien from the time the first installment thereof becomes due. 2. A lien pursuant to this section is prior to all other liens and encumbrances on a unit except:
(1) Liens and encumbrances recorded before the recordation of the declaration;
(2) A mortgage and deed of trust for the purchase of a unit recorded before the date on which the assessment sought to be enforced became delinquent;
(3) Liens for real estate taxes and other governmental assessments or charges against the unit;
(4) Except for delinquent assessments or fines, up to a maximum of six months' assessments or fines, which are due prior to any subsequent refinancing of a unit or for any subsequent second mortgage interest....
The 2014 amended version of this statute recites:
1. The association has a lien on a unit for any assessment levied against that unit or fines imposed against its unit owner from the time the assessment or fine becomes due. The association's lien may be foreclosed in like manner as a mortgage on real estate or a power of sale pursuant to chapter 443. Unless the declaration otherwise provides, fees, charges, late charges, fines, and interest charged pursuant to subdivisions (10), (11), and (12) of subsection 1 of section 448.3-102 are enforceable as assessments pursuant to this section. If an assessment is payable in installments, the full amount of the assessment is a lien from the time the first installment thereof becomes due.
2. A lien pursuant to this section is prior to all other liens and encumbrances on a unit except:
(1) Liens and encumbrances recorded before the recordation of the declaration;
(2) Any mortgage or deed of trust securing a purchase money loan for the unit recorded prior to August 28, 2014;
(3) Any mortgage or deed of trust on a unit recorded before the date on which the assessment sought to be enforced became due except that a lien under this section has limited priority over the mortgage or deed of trust for common expense assessments in an amount not to exceed six months of the delinquent common expense assessments based on the periodic budget adopted by the association under subsection 1 of section 448.3-115 which would have become due in the absence of acceleration during the six months immediately preceding the date of filing of a petition to enforce the association's lien or the date of sale by the holder of a mortgage or deed of trust;
(4) Liens for real estate taxes and other governmental assessments or charges against the unit;
(5) If the association forecloses its lien under this section in a nonjudicial manner under chapter 443, the association shall not be entitled to the limited lien priority for common expense assessments provided under subdivision (3) of subsection 2 of this section; ...

See §§ 448.1-101 to 448.4-120. The UCA is "intended as a unified coverage of its subject matter[.]" § 448.1-109.

51 AM.JUR.2d Liens § 56 (2018). Section 448.1-108 adopts "principles of law and equity" to "supplement the provisions of [the UCA], except to the extent inconsistent [therewith]"-neither do we, nor has any other Missouri appellate court, read this section to contravene the principle that to claim the right of statutory lien, the claimant must show compliance with the controlling statutory requirements connected to that right.

The Ventana Owners Association, Inc. v. Ventana KC, LLC , 481 S.W.3d 75, 79 (Mo.App. E.D. 2015) (internal quotation and citation omitted); see § 448.1-104.

Carroll v. Oak Hall Associates, L.P. , 898 S.W.2d 603, 606 (Mo.App. W.D. 1995) (holding that by-law tracking notice provisions in prior Missouri law-the "Condominium Property Act," section 448.080 (1986)-was "impotent" to prevent application of the new and controlling UCA provisions).

Notably, section 448.2-103 does not mean that there must be a conflict between the by-laws and declarations before any inconsistencies with the UCA become relevant-statutorily unauthorized provisions are impotent, regardless of whether there is a conflict between the by-laws and the declaration. See Carroll , 898 S.W.2d at 606.

"The United States Constitution and the constitutions of every state prohibit ex post facto laws. Only a handful of state constitutions prohibit the passage of laws retrospective in their operation. The Missouri Constitution has included such a provision since 1820." State v. Wade , 421 S.W.3d 429, 432 (Mo. banc 2013). The Missouri Constitution states: "That no ex post facto law, nor law impairing the obligation of contracts, or retrospective in its operation, or making any irrevocable grant of special privileges or immunities, can be enacted." Mo Const. art. I, § 13 ; see Wade , 421 S.W.3d at 432 n.4.

While the Western District purported to rely on the attorney general's concession rather than deciding the issue of law on its own, party admissions, concessions, or omissions as to matters of law have no effect as to an appellate court's duty to independently resolve such matters of law , nor on the precedential effect of an appellate court's resolution thereof. See State v. Clark , 490 S.W.3d 704, 716 n.4 (Mo. banc 2016) (Wilson, J., concurring); State v. Hardin , 429 S.W.3d 417, 421 n.4 (Mo. banc 2014) ; State v. Biddle , 599 S.W.2d 182, 186 n.4 (Mo. banc 1980). The Western District applied the law to the facts in a published decision, and thus stare decisis must take the day. Hinkle v. A.B. Dick Co. , 435 S.W.3d 685, 689 (Mo.App. W.D. 2014). Even if this case had no precedential value, its reasoning is persuasive, and our disposition would be the same.

This principle is well-illustrated in the marketplace by the disparate values commonly attached to senior and junior mortgages in the foreclosure arena.